# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

ALBERT J. RINGEN *et al.* Appellees, *vs.* ALONZO H. RANES, Appellant.

*Opinion filed April 23, 1914.*

1. ATTORNEY AND CLIENT—*when question whether contract was wise one to make cannot be inquired into.* An attorney may contract with reference to his services and compensation before he undertakes his client's case, and in such case, if the parties were competent to·contract and no fraud or misrepresentation of any fact is shown, the question whether the contract was a wise one for the client to make cannot be inquired into.

2. SAME—*all purchases by attorney from client are not necessarily voidable at client's election.* There is no necessary incapacity for dealing between an attorney and his client, but the burden rests upon an attorney who bargains with his client in a matter of advantage to himself, to show that the transaction was fair and equitable, that the client was fully informed of his rights and the nature and effect of his contract, and was so placed as to be able to deal with the attorney at arm's length. ·

3. SAME—*fact that method of obtaining employment was unethical does not vitiate the contract.* The canons of professional ethics adopted by the Illinois State Bar Association and the American Bar Association are not enforced by the courts as binding obligations, and the fact that the method adopted by an attorney to secure employment is in violation of such ethical rules does not, of itself, vitiate the contract of employment.

APPEAL from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

HARRY F. BREWER, and ALBERT M. CROSS, for appellant.

DELBERT A. CLITHERO, and JAMES H. DUNN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant is an attorney at law and on November 4, 1912, was employed by the appellees, Albert J. Ringen and Edward J. Ringen, to contest the supposed will of their mother, Carolina Ringen. The employment was evidenced by a written contract, and in payment of the compensation therein stipulated, the appellees, on November 12, 1912, conveyed to appellant two lots in the city of Chicago. They afterward filed a bill in the superior court of Cook county to set aside this conveyance, and this appeal is from a decree granting the relief prayed for.

It appeared from the evidence that Samuel Peterson, an attorney at law who had then been admitted to the bar about a year, was called on October 9, 1912, to the house of Carolina Ringen to draw her will. He was a stranger to Mrs. Ringen, and Otto H. Miehle, to whom he was also a stranger, accompanied him to her house. He found her dangerously ill, unable to speak and able only to signify assent or dissent by nodding or shaking her head. From some questions put to her and so answered, and from information given by persons present, Peterson undertook to draw a will, but before it was completed she was wholly unconscious. Nevertheless, yielding to the insistence of those present, as he testified, Peterson signed her name to the will, and, placing the pen in her hand, made her mark for her. He then signed the will and had two other witnesses

sign, all for the purpose, as he said, of having the instrument established provided the testatrix would resume a normal condition so that the will could be read to her, to be acquiesced in by her. She died the next day without regaining consciousness. Her heirs were the appellees. Albert was twenty-nine years old, a structural ironworker, married, and had one child. Edward was twenty-five years old, married, and had one child but was separated from his wife. He lived in Wisconsin. The value of the estate was about $16,000. The will left the whole estate to Otto H. Miehle in trust, directed the payment of legacies of $500, each, to the sons, to be paid to them when Blanche, the younger of the grandchildren, should be twenty-one years old, provided for the education of the grandchildren and the payment of a few small legacies, and requested that Otto H. Miehle should be appointed executor without bond. Neither of the appellees was present at the time the supposed will was prepared or knew anything about it until after their mother's death. Mrs. Ringen was buried on October 12, and the next day the appellant called upon Albert Ringen at his home and told him that he and his brother would need an attorney and that the appellant was an attorney, having an office in the Unity building. The appellant called at Albert's house several times before the appellees agreed to employ him, and also met Edward, who says that the appellant told him that he had the inside track of the will; that Edward needed an attorney and the appellant was an attorney. The appellant also sent Leighton, a man in his employ, to bring Edward to the appellant's office. In the meantime the appellees had employed another attorney, but after various interviews, upon the appellant's promising to take care of the other attorney, the appellees on November 4, 1912, employed the appellant to oppose the will, and gave him a written contract to pay him for his services a sum of money equal to one-fourth of the appraised value of the estate.

The greater part of the property left by Mrs. Ringen was real estate, consisting of five lots in Baxter's subdivision of a tract in the city of Chicago. On one of the lots was a two-story house and on another a three-story house. On November 8, 1912, appellees, with their wives, joined in conveying two of the lots to the appellant in satisfaction of his compensation under the employment of November 4, and a written agreement was entered into that an effort should be made to sell the lots, and if they were sold within four months for more than $4000 the excess over that amount should be paid to the appellees, but if not so sold within four months the contract was to become inoperative. During the four months the contract was to remain in the hands of Samuel Peterson. This contract further stated that an amicable arrangement had been reached by the heirs of Carolina Ringen for the division of her estate. In pursuance of the arrangement referred to, the appellees conveyed to Harry F. Brewer the remaining lots, and he conveyed the lot on which was the three-story house to Albert J. Ringen and his wife for life, with remainder to the heirs of their bodies, and the other two lots, with the two-story house, to Edward and his wife, with remainder to the heirs of their bodies. Miehle had at that time presented the will for probate. Peterson, as Miehle's attorney, had filed it, together with a petition for probate and for letters testamentary, on October 25. A hearing was had in the probate court on December 24, at which Peterson testified to the facts which have been stated in regard to what occurred in connection with the will when it was prepared by him. The two other witnesses who signed the will testified to a different state of facts in regard to the condition of Carolina Ringen and the circumstances attending the affixing of her name and mark to the instrument. The appellant represented the appellees on this hearing and Mr. Clithero represented the proponents of the will. Probate was denied, and Mr. Clithero, on behalf of his clients, prayed an

appeal to the circuit court, which was allowed upon the filing of bond' within twenty days. Before that time had elapsed the bill in this case was filed by the appellees. ·

The decree cannot be sustained on the ground that the appellees were drunkards and spendthrifts or had not sufficient mental capacity to contract with the appellant or to make the deed in question, because .these facts are neither alleged in the bill nor established by the evidence. There is no basis at all for the charge so far·as Albert is concerned. It does appear that Edward drank intoxicating liquor and got drunk, but the evidence does not show that he was drunk at the time the contract or the deed was made, that his drinking habits had affected his mental capacity, or that he was a spendthrift.

Peterson was made a party to the bill, and it was alleged that Peterson and appellant conspired together to defraud the appellees, and in order to induce them to employ the appellant as their counsel and to procure them to deed said lots to him, although the appellant well knew that there was no will and that the said purported will had never been executed in form of law, they represented to the appellees that it would be necessary for them to employ counsel and resist the admission of said purported will to probate, otherwise it would be admitted to probate and the appellees would be deprived of their rights as heirs of Carolina Ringen and the property would pass to Otto H. Miehle, as trustee, according to the terms of said purported will, and it was alleged that the appellant held the title to the lots in secret trust for himself and Peterson. There was no evidence of any such conspiracy and the court dismissed the bill as to Peterson. Peterson had an office on the fourteenth floor and the appellant one on the fifteenth floor of the same building. They had been acquainted for two months before this contract was made, but Peterson denied all interest in the contract, the land or the deed, and denied giving the appellant, and the appellant denied receiving from

Peterson, any information about the will or the circumstances of its execution. The appellant says that he lived in the neighborhood of the appellees, and that he thinks Leighton was the first person who spoke to him about Carolina Ringen having left a will. The evidence does not justify finding that the appellant and Peterson were acting together to defraud the appellees.

The appellees invoke the principles applying to cases where a fiduciary relation exists and the rules which govern attorneys in dealing with their clients in regard to the subject matter of litigation. The relation of attorney and client did not exist prior to the making of the contract on November 4, 1912, and in the making of that contract no fraud is shown. Whether it was a wise contract or not we have no jurisdiction to inquire, if it was fairly entered into. No misrepresentation of any fact is shown. The amount of the compensation, in the light of subsequent occurrences, is large. It now seems clear that the will could not have been admitted to probate. The executor named in the will had filed a petition and was insisting upon its probate. Peterson, who wrote the instrument and whose name appeared on it as a witness, was his attorney. The other witnesses had not yet testified. In fact, one of them did testify to every fact entitling the will to probate and it could not be known that the other would not do so. Between persons dealing at arm's length it cannot be said that the amount of the compensation agreed upon was so grossly excessive as alone to amount to fraud. If contested and protracted litigation had followed, as seemed possible when the contract was made, the compensation might not have been unreasonable. An attorney may contract with his client in regard to his services and compensation before he undertakes the business of the client or after the relation is dissolved. *Elmore* v. *Johnson,* 143 Ill. 513.

The deed of November 8 was made while the relation of attorney and client existed, but, assuming the contract of

November 4 to have been valid, the conveyance meets all the tests of a transaction between attorney and client. It is not the law that all purchases by an attorney of his client's property are voidable at the election of the client. There is no necessary incapacity for dealing between an attorney and client, but the burden rests upon the attorney who bargains with his client in a matter of advantage to himself to show that the transaction is fair and equitable, that the client was fully informed of his rights and the nature and effect of his contract, and was so placed as to be able to deal with his attorney at arm's length. (*Morrison* v. *Smith,* 130 Ill. 304.) The evidence shows that the value of the lots conveyed to appellant was $2800. Under his contract he would be entitled, at the end of the litigation, to $4000. The appellees understood the effect of their deed. The consideration was adequate. They acted with full knowledge, without undue influence, and they have shown no sufficient reason why their deed should be set aside.

The methods adopted by the appellant to secure his employment by the appellees as their attorney were unprofessional. They indicate an inferior standard of professional conduct and are in direct violation of the canons of professional ethics adopted by the Illinois State Bar Association and the American Bar Association. Those canons are not of binding obligation and are not enforced as such by the courts, but they constitute a safe guide for professional conduct in the cases to which they apply.

The decree is reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*