(No. 63045.—

JOHN R. MARTIN, Appellant, v. HEINOLD COMMODITIES, INC., Appellee.

*Opinion filed February 20, 1987.—Modified on*
*denial of rehearing June 18, 1987.*

68

SIMON, J., CLARK, C.J., and MILLER, J., dissenting.

William J. Harte, Ltd., and Plotkin & Jacobs, Ltd., of Chicago (William J. Harte, John G. Jacobs, and Jonah J. Orlofsky, of counsel), for appellant.

H. Blair White, William J. Nissen and David M. Schiffman, of Sidley & Austin, of Chicago, for appellee.

Jane F. Wheeler, Assistant Attorney General, of Oklahoma City, Oklahoma, for *amicus curiae* Michael C. Turpen, Attorney General of the State of Oklahoma.

Glenn E. Carr and Caroline O. Metter (Shoenberger), Assistant State's Attorneys, of Chicago, for *amicus curiae* Richard M. Daley, State's Attorney.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, John R. Martin, a resident of Oklahoma, on behalf of himself and all others similarly situated, filed a four-count complaint in the circuit court of Cook County against defendant, Heinold Commodities, Inc. (H.C.I.). Counts I and II alleged defendant's breach of its fiduciary duty in connection with plaintiff's purchases of London Commodities Options (LCOs) in that defendant failed to disclose facts material to these purchases. Specifically, plaintiff alleged that defendant charged substantial addi-

tional commissions on each LCO which it concealed in a fee labeled "foreign service fee." Counts III and IV alleged that defendant's failure to disclose constituted a deceptive business practice in violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*).

Defendant answered and moved for judgment on the pleadings, asserting plaintiff's failure to state a cause of action (Ill. Rev. Stat. 1981, ch. 110, par. 45(1), now Ill. Rev. Stat. 1985, ch. 110, par. 2—615(a)). After considering memoranda and oral arguments of the parties, defendant's motion was denied.

The court then granted plaintiff's motion to certify the cause as a class action. (Ill. Rev. Stat. 1981, ch. 110, par. 57.2, now Ill. Rev. Stat. 1985, ch. 110, par. 2—801.) Following certification and after initial discovery, the named plaintiff moved for summary judgment on counts I and II as provided by Supreme Court Rule 192 (73 Ill. 2d R. 192). Defendant moved for summary judgment on all counts (Ill. Rev. Stat. 1981, ch. 110, par. 57, now Ill. Rev. Stat. 1985, ch. 110, par. 2—1005). After considering memoranda and oral argument for and against both motions, the court denied defendant's motion and allowed the named plaintiff's motion for summary judgment on counts I and II. In granting the motion, the court found that the foreign-service fee was used to pay commissions on LCO transactions; that this fact was material to the decision to invest in LCOs; that failure to disclose this material fact violated, as a matter of law, defendant's fiduciary duty to avoid self-dealing; and that the plaintiff class was entitled to recover its investment losses. The court awarded damages in the amount of $1,728,948.27 and prejudgment interest in the amount of $458,219.05.

Defendant unsuccessfully moved to vacate the court's order granting partial summary judgment. Following entry of the court's "express written finding that there

[was] no just reason for delaying enforcement or appeal" pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), defendant appealed.

The appellate court reversed, concluding that partial summary judgment was improper because "the question of the materiality of the information present[ed] a genuine issue of material fact." (139 Ill. App. 3d 1049, 1057.) The appellate court also reversed the award of damages, holding that the defendant could be held liable only for losses actually caused by its failure to disclose. The court further held that certification of the class merited reconsideration to determine whether or not "in a multistate action such as this ***, there is a possibility that differing questions of law will predominate over the common question of fact." 139 Ill. App. 3d 1049, 1061.

Plaintiff sought review in this court, pursuant to Supreme Court Rule 315 (103 Ill. 2d R. 315), which was allowed. This court also accepted *amicus curiae* briefs from the Attorney General of the State of Oklahoma and the Attorney General of the State of Illinois pursuant to Supreme Court Rule 345 (87 Ill. 2d. R. 345).

The underlying facts of this appeal are as follows. During a period from September 1977 through May 31, 1978, defendant acted as broker to the plaintiff class in the purchase of LCOs. Defendant conducted LCO transactions through its London subsidiary, Heinold Commodities Limited. In connection with these transactions, members of the plaintiff class completed and executed a "Customer Agreement" (Agreement) and received a "Summary Disclosure Statement" (Disclosure Statement). At such time as an LCO was purchased by a member of the plaintiff class, execution of the purchase was confirmed by defendant through a document referred to as a "Combined Commodity Statement Confirmation and/or Purchase and Sale" (Confirmation).

The Agreement executed by members of the plaintiff class provided *inter alia* that: (1) "[c]ustomer *** acknowledges that he has received and read the Disclosure Statement(s) relating to trading in commodity options and understands that brokerage commissions, mark-ups and foreign service fees of commodity options vary substantially among brokerage firms" and (2) "[t]his [A]greement shall not be deemed to be accepted by [H.C.I.] or become a binding contract between [c]ustomer and [H.C.I.] until approved at 222 South Riverside Plaza, Chicago, Illinois 60606 by (i) [H.C.I.'s] New Accounts Department and (ii) the Regional Manager of the office of [H.C.I.] which furnished this Agreement to [c]ustomer."

The Disclosure Statement received by members of the plaintiff class provided in pertinent part that "[t]he purchase price of a London Commodity Option consists of three components. One is a premium which is charged in London by the grantor or seller of the option. Such premiums are determined in the open exchange market through competitive bidding or between dealers in accordance with the rules and regulations in force on the exchanges on which such options are available. H.C.I. adds a foreign service fee of $1,200 to the London premium as well as one half the commodity futures commission rate normally charged on futures transactions. These charges have the following purpose: to recover costs of telephone, telex, bookkeeping, floor brokerage, clearing fees, and research costs involved with options transactions; *as well as to compensate H.C.I. and the registered representative who services the options customer during the life of options for conducting such business.* The foreign service fee for options which expire a relatively short time after their purchase, e.g. one week or one month options, may have a service fee of less than $1,200." (Emphasis added.) The Disclosure Statement also included a "tear-off" section which was signed by

each member of the plaintiff class, indicating that the Disclosure Statement had been read and its contents understood.

Each confirmation of a transaction listed the following charges: an option premium (*i.e.*, the actual cost of a commodity futures option); the foreign-service fee; and a commission. The commission assessed on most transactions was a standard charge of $47.50. As noted, the foreign-service fee assessed varied by the length of the option period.

The complaint alleged that, subsequent to completing an Agreement and receiving a Disclosure Statement, the named plaintiff purchased at least one LCO for $3,547.38. The complaint further alleged that the Confirmation of this transaction received by the named plaintiff listed the following charges: $3,547.38 representing the cost of the option; $47.50 representing a commission on the transaction; and $900 representing the foreign-service fee assessed for the purchase. The complaint also alleged that 75% of the foreign-service fee assessed on LCOs was allocated to the defendant and disbursed as commissions.

Subsequent discovery confirmed that the defendant did receive 75% of the foreign-service fee. Discovery established the following facts with respect to the internal distribution of the foreign-service fee assessed on each LCO transaction. On a "typical" LCO purchase, as described in defendant's Disclosure Statement, the foreign-service fee would be $1,200. Twenty-five percent of the fee, or $300, was allocated to defendant's London subsidiary, Heinold Commodities Limited. Seventy-five percent of the fee, or $900, was allocated to the defendant. Depending upon the arrangement between the defendant, the registered representative servicing an account, and the manager of the servicing office, between $500 and $600 would be allocated to the servicing office for

distribution as commission to the registered representative and manager of the service office. The remainder, approximately $300 or $400, was retained by the defendant. It is undisputed that the amount of the foreign-service fee controlled by the defendant and the distribution of the fee as outlined was not disclosed to members of the plaintiff class.

The complaint is silent with respect to several points of significance to this litigation. First, there is no allegation that representatives of the defendant initiated discussions between the named plaintiff and members of the plaintiff class, discussions eventually culminating in the purchase of LCOs. Second, there is no allegation of what specifically was discussed with the named plaintiff and members of the plaintiff class by representatives of the defendant. Third, there is no allegation that the named plaintiff or any member of the plaintiff class sought additional information from defendant's representatives concerning the exact amount of the foreign-service fee actually allocated to compensation or to whom the fee, as compensation, was distributed. Finally, the complaint contains no allegation that these questions, if asked, would not have been answered or would have been answered inadequately.

These points, however, were covered in the deposition of the named plaintiff taken by the defendant. Therein, the named plaintiff stated that he became interested in LCOs after talking with a friend and that a representative of the defendant contacted him to explore his interest. He further stated that he was told that the total price on an LCO transaction included the cost of the option, a foreign-service fee, and a commission. He indicated that he asked about the purpose of the foreign-service fee and stated that defendant's representative told him that the fee covered defendant's cost of doing business in London. There is no indication that the named

plaintiff made any further inquiry into the use and distribution of the foreign-service fee.

The named plaintiff contends that both the amount and the distribution of the foreign-service fee were facts material to the decision to invest in LCOs and that the defendant's failure to disclose these facts constituted a breach of its fiduciary duty as a matter of law. According to the named plaintiff, the plaintiff class is entitled to recover all losses sustained on investments made without benefit of these material facts.

Defendant contends that it has no fiduciary duty to disclose its compensation or the manner of its internal distribution of compensation. Assuming *arguendo* that there was a fiduciary duty to disclose this information, defendant maintains that its Disclosure Statement was adequate as a matter of law to discharge this duty. Alternatively, defendant argues that an issue of fact is presented as to whether or not its Disclosure Statement was adequate to discharge its fiduciary duty to disclose material facts. Because of this factual issue, defendant concludes that partial summary judgment for the plaintiff class was improper.

Defendant also takes issue with the measure of damages, arguing that only investment losses actually caused by its failure to disclose are recoverable. Finally, defendant seeks decertification of the class, contending that there is neither a common issue of law or fact "predominat[ing]" over any questions affecting only individual members." (Ill. Rev. Stat. 1981, ch. 110, par. 57.2(2), now Ill. Rev. Stat. 1985, ch. 110, par. 2—801(2).) We consider first the nature of the defendant's duty to the plaintiff class and when that duty attached.

There is no dispute that defendant, as broker for the plaintiff class in the purchase of LCOs, was the agent of the class and, as such, bore a fiduciary duty to the class. (*In re Rosenbaum Grain Corp.* (7th Cir. 1939), 103 F.2d

656, 661.) There is also no dispute as to the nature of the defendant's fiduciary duty to the plaintiff class. Within the scope of its agency, defendant is required to act on behalf of the plaintiff class and in its interests, refraining from acting in its own interest without first disclosing those facts which it has reason to believe would be material to the investment decisions made by members of the plaintiff class. *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 385; *Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267-68; *Blanchard v. Lewis* (1953), 414 Ill. 515, 524; see generally Restatement (Second) of Agency secs. 389, 390 (1958).

There is, however, considerable dispute as to when defendant's fiduciary duty attached. The named plaintiff contends that defendant's fiduciary duty had attached at the time defendant initially indicated that a foreign-service fee would be assessed for each LCO transaction, and that because defendant's fiduciary duty was operative at the time the foreign-service fee was discussed, all information relating to the fee was information communicated within the scope of defendant's agency. The named plaintiff thus concludes that the defendant was obligated by its fiduciary duty to disclose how much of the foreign-service fee would be distributed as compensation to defendant and its employees.

Defendant responds by arguing that it made available to the plaintiff class general information concerning the cost of LCOs, commissions, and fees during the arm's length bargaining which occurred prior to the creation of defendant's agency. Included in this general information communicated during this preagency period was the fact that the foreign-service fee would be used for compensation. Defendant maintains that it was not bound by the requirements of a fiduciary duty during this preagency bargaining and, therefore, was under no duty to commu-

nicate any additional information concerning the internal use and distribution of the foreign-service fee. According to the defendant, its fiduciary obligations attached only after the parties agreed that the defendant would act as broker for each member of the plaintiff class in the purchase of LCOs. In support of its contention, defendant points to the Agreement signed by each member of the plaintiff class and which provides that the defendant would not become bound by the Agreement until such time as defendant received and accepted the executed Agreement. Defendant also cites the general rule that an "agent is subject to no fiduciary duty in making the agreement by which he becomes [an] agent and may thereafter act in accordance with its terms." (Restatement (Second) of Agency sec. 389, comment b (1958); *Ringen v. Ranes* (1914), 263 Ill. 11, 16; *Action Real Estate Corp. v. Bulechek* (Iowa 1981), 309 N.W.2d 502, 504.) Therefore, defendant concludes that, at the time it informed members of the plaintiff class, through its Disclosure Statement, that a foreign-service fee would be assessed and would be allocated in part to compensation, it had no duty to disclose additional information about how much of the fee would be distributed as compensation or to whom it would be distributed.

We agree that, as a general rule, an agent's fiduciary duty is limited to actions occurring within the scope of his agency and that the creation of the agency relationship is not itself within that scope. However, we are unwilling to conclude, as a matter of law, that a fiduciary duty can never be imposed upon a prospective agent prior to the formal creation of an agency relationship. Thus, while the general rule governing preagency contacts does not require disclosure of the terms of a prospective agent's compensation, we believe that facts could be established which would support imposition of a fiduciary duty upon a prospective agent applicable to

preagency contacts. Here, for example, it appears that defendant's representative acted as broker for the named plaintiff in the purchase of at least one LCO before the defendant, at its Chicago office, accepted the named plaintiff's executed Agreement under which defendant formally agreed to act as a broker with respect to LCO transactions.

We intimate no view as to the specific facts which would support imposition of a fiduciary duty prior to the formal creation of an agency relationship between members of the plaintiff class and the defendant. Further, on this record, we are unable to say that the plaintiff class could plead and prove facts sufficient to justify imposition of a fiduciary duty. Our holding is limited to recognizing the possibility of a factual exception to the general rule that no fiduciary duty attaches prior to the creation of an agency relationship.

We also note that, where the very creation of the agency relationship involves a special trust and confidence on the part of a principal in the subsequent fair dealing of an agent, the prospective agent may be under a fiduciary duty to disclose the terms of his employment as an agent. (Restatement (Second) of Agency sec. 390, comment e (1958); *cf. Hill v. Bache Halsey Stuart Shields Inc.* (10th Cir. 1986), 790 F.2d 817, 824 (a commodities broker who controls his customer's account has a fiduciary duty with respect to transactions he undertakes on behalf of his principal); *Greenwood v. Dittmer* (8th Cir. 1985), 776 F. 2d 785, 788 (a commodities broker has no fiduciary duty to his customer where the broker does not control the customer's account).) Determination of whether or not this exception applies to the case at bar is also a matter of fact.

It is clear therefore that summary judgment was not appropriate in this case. We cannot conclude, as a matter of law, that defendant's nondisclosure that a substantial

portion of the foreign-service fee would be distributed as compensation was within the scope of its agency. Therefore, we do not believe that defendant had a fiduciary duty, as a matter of law, to disclose this fact. In our view, defendant's duty to disclose is essentially factual and depends upon a showing, not made by the named plaintiff, that one of the aforementioned exceptions applies, thereby warranting imposition of a fiduciary duty at the time the agency relationship was contemplated but before it was created as provided by the terms of the Agreement entered into between members of the plaintiff class and the defendant.

We hold that the issue of defendant's preagency fiduciary duty to disclose that portion of the foreign-service fee allocated to commissions is a matter of fact rather than a matter of law. We emphasize that this holding should not be interpreted to mean that a preagency fiduciary duty to disclose all compensation expected to be derived by an agent during the course of his agency can never arise. We hold only that the plaintiff class is required to establish at trial facts sufficient to support imposition of this duty.

We therefore affirm the appellate court's reversal of the order entering partial summary judgment for the plaintiff class. We also agree that remand is required so that the plaintiff class may have the opportunity to avail itself of one of the aforementioned exceptions to the general rule governing the time at which an agent's fiduciary duty attaches. In the event this matter will proceed to trial, we address that portion of the appellate court's opinion requiring reconsideration of the certification of the plaintiff class.

The appellate court, in ordering reconsideration, relied upon this court's decision in *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, *cert. dismissed* (1982), 459 U.S. 86, 74 L. Ed. 2d 249, 103 S. Ct. 484. *Gillette* concerned a

class action brought in Illinois on behalf of certain consumers residing in Illinois and in a number of other States.

The precise issue before the court in *Gillette* was whether or not class certification required a showing that both a common issue of law and a common issue of fact predominate over any individual issues of law or fact. This court held that certification required only that there be either a predominating common issue of law or fact, not both. In so holding, the *Gillette* court concluded that there was a common issue of fact presented by the plaintiff class. However, the court observed that this common factual issue might not predominate over individual legal issues because the plaintiff class was composed of residents from other States. The court assumed, but did not decide, that the substantive law of the States whose residents were members of the class might govern the issue of liability as to their residents. Hence, it was noted that the common factual issue might not predominate over individual legal issues unless it was possible to ascertain how many distinct substantive laws actually applied. If, for example, the substantive law of 50 States governed resolution of the common issue of fact, the common factual issue might no longer predominate. This realization prompted the court to observe that, if the substantive laws of the various States whose residents composed the class could be grouped into a manageable number of subclasses based upon substantive similarity, the number of different substantive laws applicable to the common factual issue would not be so individualized as to defeat the predominance of the common factual issue and would not necessitate decertification of the class.

The appellate court applied *Gillette* to the instant case and held that there was a common factual issue. However, given the multistate composition of the plain-

tiff class, the court apparently believed that the common factual issue would not predominate for purposes of class certification unless a *Gillette*-type grouping of the substantive laws of the States whose residents composed the class could be effectuated.

We agree with the court that there is a common issue of fact in this case. However, we do not agree that a *Gillette*-type remand is necessary, for we conclude that the substantive law of Illinois can be applied to resolve the factual issue common to the class.

The Supreme Court recently addressed the question of which State's substantive law governs resolution of common factual issues presented in a multistate class-action litigation. The court held that the substantive law of the forum State could be applied, consistent with the requirements of procedural due process, where the forum State has " 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests' *** ensur[ing] that the choice of [its] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts* (1985), 472 U.S. 797, 821-22, 86 L. Ed 2d. 628, 648, 105 S. Ct 2965, 2980, quoting *Allstate Insurance Co. v. Hague* (1981), 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 531, 101 S. Ct. 633, 640.

Applying the *Phillips Petroleum* standard to the instant case, it is apparent that Illinois substantive law can be applied to resolve the underlying common factual dispute. Here each member of the plaintiff class asserts the same breach of defendant's fiduciary duty with regard to the same nondisclosure of the same fact. This common allegation implicates the legitimate interests of the State of Illinois in insuring that persons and entities within its jurisdiction, insofar as they undertake to act as agents, do so in accordance with its law. In this connection, we observe that defendant's principal place of business is Illinois and that this fact was made manifest to each mem-

ber of the plaintiff class in the following ways: (1) all payments related to LCOs were to be remitted to defendant's Chicago office; (2) all complaints were to be directed to the Chicago office; (3) the law of Illinois governed the Agreement between defendant and each member of the plaintiff class; (4) all legal disputes were to be adjudicated in the courts of Illinois or in Federal courts situated in Illinois; and (5) the Agreement establishing the agency relationship became binding only upon its receipt and approval by defendant at its Chicago office. On these facts, there can be no doubt that the claim of each member of the plaintiff class implicates the legitimate interests of Illinois in applying its law to adjudicate a dispute involving a business principally situated in its jurisdiction and which, by its own efforts, insistently has sought to avail itself of both the courts and the laws of the forum State.

For the reasons stated, we affirm the judgment of the appellate court insofar as it reversed the circuit court's granting of summary judgment against the defendant on counts I and II. We reverse that portion of the appellate court judgment remanding the cause for reconsideration of certification of the plaintiff class. The judgment of the circuit court of Cook County entering summary judgment against the defendant on counts I and II is reversed. This cause is remanded to the circuit court for proceedings in accordance with the views expressed herein.

*Appellate court affirmed in part and reversed in part; circuit court reversed; cause remanded, with directions.*

JUSTICE SIMON, dissenting:

" 'The relationship *** is fiduciary in character, and imposes upon all the participants the obligation of loyalty

*** and of the utmost good faith, fairness and honesty ***.' '' *Ditis v. Ahlwin Construction Co.* (1951), 408 Ill. 416, 428.

Heinold's disclosure statement misrepresented the nature of its $1,200 foreign-service fee. Rather than informing its prospective customers that 75% of the foreign-service fee was an additional commission—a kickback to the broker and regional office manager from the London office—Heinold described the fee as necessary to cover expenses such as overseas telephone calls and telexes. Heinold contends, and the majority agrees, that this deception, as a matter of law, fails to breach the fiduciary duty Heinold owed to the plaintiff class purchasers of LCOs.

The majority's rationale for this result is that under the general rule a potential agent does not owe its prospective principal a fiduciary duty, and has no obligation to disclose the terms of its compensation. Because Heinold made the statements regarding the foreign-service fee prior to accepting the terms of the form contract which it prepared and submitted to prospective customers, the majority concludes that no agency relationship existed, and therefore Heinold would have no duty to disclose material information to the plaintiff class. After the agency was established, the majority contends that Heinold, as a matter of law, was under no obligation to disclose the true nature of its foreign-service fee, since the scope of a fiduciary duty does not generally include disclosing the terms of one's compensation. See Restatement (Second) of Agency sec. 390, comment e (1958).

In its subtle manipulation of these general principles, the majority has transformed rules designed to permit fiduciaries to freely negotiate their fees into opportunities for fiduciaries to conceal their interests in transactions and take advantage of those they are serving. My col-

leagues have become so concerned with the exact point at which the fiduciary duty attaches that they have totally overlooked the fundamental principles governing fiduciary relationships.

The appellate court's conclusion that general rules "cannot be interpreted so as to permit a broker to call a commission by another name at the time of the transaction and subsequently assert that it is a commission, simply part of the broker's compensation, in order to avoid liability for nondisclosure" (139 Ill. App. 3d 1049, 1055) is well-reasoned. It is, moreover, more consistent with the high standards the law imposes upon and expects of brokers in their dealings with their principals than is the rationale offered in the majority opinion. "[A] spirit of trust and fidelity pervades the entire dealing between broker and customer." (*In re Rosenbaum Grain Corp.* (7th Cir. 1939), 103 F.2d 656, 661.) A commodities broker is his customer's agent with respect to the execution of a transaction and, "as such, as a matter of law, he owes his customer certain fiduciary duties within the realm of the execution of the transaction." (139 Ill. App. 3d 1049, 1055, citing *In re Rosenbaum Grain Corp.* (7th Cir. 1939), 103 F.2d 656, 660.) As an agent, the broker has a fiduciary duty to give his customers any information within his knowledge which is relevant to the affairs entrusted to him and which " 'the principal would desire to have and which can be communicated without violating a superior duty to a third person.' " (*Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (N.D. Ala. 1971), 337 F. Supp. 107, 110-11 (quoting Restatement (Second) of Agency sec. 381 (1958)) *aff'd* (5th Cir. 1972), 453 F.2d 417.) This is an affirmative duty and the "agent must act in the utmost good faith, making known to his principal all material facts within the agent's knowledge which in any way affect the transaction or subject mat-

ter of the agency." *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 80.

The majority accurately observes that a fiduciary is required to "act on behalf of the plaintiff class and in its interests, refraining from acting in its own interest without first disclosing those facts which it has reason to believe would be material to investment decisions made by members of the plaintiff class." (117 Ill. 2d at 77, citing *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 385, *Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267-68, and *Blanchard v. Lewis* (1953), 414 Ill. 515, 524.) At the very least, Heinold owed the plaintiff class a fiduciary obligation when it collected the money, purchased the LCO, and pocketed the nondisclosed commission. The fiduciary relationship does not permit a fiduciary to mislead someone, become his agent, and then allow his principal to labor under the misimpression caused by the fiduciary's own previous statements.

It is immaterial, therefore, that an agent's misleading statements were made during the "preagency" period and not after the agency was formally established. What information an agent must disclose to fulfill his fiduciary obligation is based on the materiality of the information rather than upon when the information first became relevant—that is, before or after the agency is created. The majority's interpretation of black-letter legal principles alters the very nature of the inquiry. Rather than allowing the materiality of the information to dictate whether disclosure is necessary, the majority would have a sort of magical time, an arbitrary cutoff, based upon when the contract was accepted govern the determination of whether a fiduciary must disclose his self-interest in the transaction. As the majority concedes, an agent cannot engage in any self-dealing unless the facts are disclosed to the principal. (117 Ill. 2d at 79-80.) Short of radically

changing this fundamental principle, no matter when its fee first became relevant, Heinold would be obligated to disclose its own interest—its full commission—provided that such a commission would be material to a customer's decision to enter into the contract.

This court has concluded that a fact is material within the meaning of the Restatement:

> " 'if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his *consent to the agent to enter into the particular transaction on the specified terms.* Hence, the disclosure must include *** facts which he [the broker] should realize have or are likely to have a *bearing upon the desirability of the transaction from the viewpoint of the principal.'* " (Emphasis added.) (*Moehling v. W. E. O'Neill Construction Co.* (1960), 20 Ill. 2d 255, 267, quoting Restatement of Agency sec. 390, comment a (1958).)

An additional cost of approximately $1,200 (or even $900, as was the charge to the named plaintiff) per transaction would be a material factor in a customer's decision to enter into a contract which, in the case of the named plaintiff, involved approximately $3,547. Knowing that a major portion of the charge is a brokerage fee rather than an expense of doing business abroad would clearly influence a customer in deciding whether to enter into a transaction in which the broker is so handsomely compensated.

The majority's formalistic conception of a fiduciary duty drains the obligation of its substance. It permits an agent to deceive a prospective customer by partially disclosing information and omitting certain details so that further customer inquiry becomes a slim possibility. Here, the specific information Heinold furnished to the plaintiff left him sanguine and without even a hint that there was additional information he should have inquired about. Heinold's disclosure statement was misleading in

that it was designed to give its prospective customers the impression that they had been given the full picture. There was nothing in the disclosure statement to suggest to customers that they should seek further information or ask some questions.

Since the fiduciary obligation contains an affirmative duty to disclose material facts (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267), it is useless to remand this case for a trial, as the majority requires, to determine whether the nature of the fee was actually examined by the plaintiffs or whether they asked for additional information concerning the foreign-service fee (117 Ill. 2d at 74-75). It is also unnecessary to remand this cause to determine whether Heinold's fiduciary duty is of such a special, confidential nature that it falls within the exception to the general rule that one seeking to be an agent is not held to a fiduciary standard when negotiating the terms of its employment (117 Ill. 2d at 79). Although Heinold negotiated its commission prior to becoming an agent, at the time it accepted the extra, nondisclosed commission it was under a fiduciary duty to the plaintiff class. Since this fiduciary obligation demands that one not act in one's own interest unless material facts are disclosed, as a matter of law Heinold breached its fiduciary duty by concealing its additional commission.

But even assuming that under *Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, one could not conclude as a matter of law that the additional commission would be a material factor in a decision to invest, the circuit court's decision granting summary judgment in favor of the plaintiff class is still correct. This court has held that "[a]ny disposition of *** funds for a purpose other than as authorized by the plaintiff [is] improper and a violation *** of the [fiduciary] duty which it [the fiduciary] owe[s] ***." (*Janes v. First Federal*

*Savings & Loan* (1974), 57 Ill. 2d 398, 408-09.) In *Janes* this court determined that when an agent supplies his principal with an accounting for the disposition of funds, the agent is held to a fiduciary standard and may use the funds only for the designated purpose. This court reached this result even though there was no express contract regarding the funds at issue in *Janes*, and despite the fact that the cost of the kickback was not ultimately borne by the plaintiff, as it is in the instant case. 57 Ill. 2d 398, 403-04.

As in *Janes*, Heinold executed a transaction on its principal's behalf and issued an accounting of the disposition of its customer's funds through a confirmation statement. That statement showed how much was spent on the foreign-service fee ($900) and how much was paid as a "commission" ($47.50). Because Heinold described its foreign-service fee as covering the cost of doing business abroad rather than as a commission for itself, under *Janes* Heinold was authorized to disperse the foreign-service fee only for this purpose and not for payment of a commission to itself.

The result is the same whether this case is decided under *Janes* or under the fundamental principle that an agent must disclose its own self-interest in the transaction. Failure to conclude in this case that as a matter of law Heinold breached its fiduciary obligation is unacceptable and inconsistent with the duties of a fiduciary. This decision holds a principal to the terms of a misleading contract while permitting a fiduciary, who knowingly misinformed and misled his principal, to retain the fruits of its falsehood. I regard this as a result inconsistent with the obligations the law places on those acting as fiduciaries.

CHIEF JUSTICE CLARK and JUSTICE MILLER join in this dissent.