1999 OK CIV APP 112

**LOBO EXPLORATION COMPANY,
an Oklahoma corporation,
Plaintiff/Appellee,**

v.

**AMOCO PRODUCTION COMPANY,
a Delaware corporation,
Defendant/Appellant.**

**No. 91,757.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

May 28, 1999.

Rehearing Denied July 2, 1999.

Certiorari Denied Nov. 10, 1999.

Allan DeVore, Jane Good Rowe, Douglas E. Burns, Terry L. Stowers (Legal Intern), Oklahoma City, Oklahoma, Robert J. Kee, Beaver, Oklahoma, for plaintiff/appellee.

David K. Petty, Guymon, Oklahoma, Brad McKim, Denver, Colorado, Gary W. Davis, Mark D. Christiansen, Oklahoma City, Oklahoma, for defendant/appellant.

James C.T. Hardwick, Donald L. Kahl, T. Lane Wilson, Tulsa, Oklahoma, for Amicus Curiae, American Petroleum Institute.

## OPINION

Opinion by CAROL M. HANSEN, Presiding Judge:

¶1 Plaintiff/Appellee, Lobo Exploration Company (Lobo), sued Defendant/Appellant, Amoco Production Company (Amoco), alleging Amoco double-billed certain costs for oil and gas wells where Lobo was a working interest owner and Amoco the operator. Lobo moved to certify the matter as a class action. After a seven-day evidentiary hearing, the trial court issued an order certifying the class. The class was defined as follows:

All persons or entities who own or owned an interest in any drilling and spacing unit, secondary recovery unit, or other enhanced recovery unit or property, or in oil and gas wells wherein Amoco was or is the operator, and where Amoco (a) used allocation accounts, sometimes referred to as "functional location accountability codes" ("FLACS") and/or "Operating Centers" to bill and collect indirect charges and/or (b) billed and collected charges for the services of supervisors above first line supervision.

Specifically excluded from the class are: (a) any and all Amoco offshore operated properties; (b) any forced pooled working interest, unless the force pooled working interest owner entered into a joint operating agreement that superseded the pooling order; (c) all claims for improper billing of charges prior to January 1, 1983; (d) all agencies, departments or instrumentalities

of the United States of America; and (e) Conoco Inc. and other persons or entities whom Plaintiff's counsel is prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct.

Amoco appeals pursuant to 12 O.S.Supp.1997 § 993(A)(6). We affirm.

¶ 2   In order to certify a class, the trial court must find (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of those of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. 12 O.S.1991 § 2023(A). In addition, it must find one of the alternative conditions of Subsection B of 12 O.S.1991 § 2023. "Class determination ... should be made by the court in a practical and realistic manner, based on what is actually involved in the litigation. No mechanical formula exists which can be applied to all cases." *Mattoon v. City of Norman,* 1981 OK 92, 633 P.2d 735, 740–741. Accordingly, we will not disturb an order certifying a class unless abuse of discretion is shown. *Black Hawk v. Exxon,* 1998 OK 70 ¶ 10, 969 P.2d 337, 342. A close question should be resolved in favor of sustaining certification because the order is always subject to modification prior to judgment on the merits. *Perry v. Meek,* 1980 OK 151 ¶ 19, 618 P.2d 934, 940.

I

¶ 3   Amoco first contends the trial court's failure to evaluate and resolve differences in state laws violated mandates of the U.S. Supreme Court, due process guarantees of the U.S. Constitution, and Oklahoma choice of law requirements. It argues the trial court did exactly what the Kansas courts attempted and the U.S. Supreme Court rejected in *Phillips Petroleum Company v. Shutts (Shutts),* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In that case, royalty owners brought a class action in Kansas state court against Phillips to recover interest on royalties suspended pending regulatory approval of gas price increases. The class representatives lived in Kansas and Oklahoma,

while the 28,100 class members resided in all fifty states, the District of Columbia, and several foreign countries. The affected leases were in eleven different states, with only a few in Kansas. The case was tried on its merits to the trial court, which applied Kansas law and held Phillips liable for prejudgment and post-judgment interest on the suspended royalties.

¶ 4   Phillips appealed to the Kansas Supreme Court, arguing the Kansas trial court (1) did not have personal jurisdiction over the absent class members under the minimum contacts requirement of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and (2) could not apply Kansas law to every claim in the dispute. The Kansas Supreme Court affirmed the trial court's judgment. On certiorari, the U.S. Supreme Court affirmed as to the personal jurisdiction issue, holding the minimum procedural due process protection required to be provided to an absent class plaintiff includes (1) notice and opportunity to be heard, (2) opportunity to opt out of the class, and (3) adequate representation by the named plaintiff.

¶ 5   However, it reversed to the extent the Kansas Supreme Court held Kansas law was applicable to all the transactions being adjudicated in the case. The Court quoted its opinion in *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–313, 101 S.Ct. 633, 639–640, 66 L.Ed.2d 521 (1981), as setting forth the rule that the Due Process Clause and Full Faith and Credit Clause require "that for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Shutts,* 472 U.S. at 818, 105 S.Ct. at 2978. The Court then evaluated Kansas' contacts to the litigation and stated,

[W]hile a State may, for the reasons we have previously stated, assume jurisdiction over the claims of plaintiffs whose principal contacts are with other States, it may not use this assumption of jurisdiction as an added weight in the scale when considering the permissible constitutional limits on

choice of substantive law. It may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a "common question of law." The issue of personal jurisdiction over plaintiffs in a class action is entirely distinct from the question of the constitutional limitations on choice of law; the latter calculus is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum.

Kansas must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests," in order to ensure that the choice of Kansas law is not arbitrary or unfair. Given Kansas' lack of "interest" in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits. (Citation and footnote omitted)

*Id.,* 472 U.S. at 821–822, 105 S.Ct. at 2979. The U.S. Supreme Court left to the state court the question of which law to apply to the various transactions, and remanded the case for further proceedings. *Id.,* 472 U.S. at 823, 105 S.Ct. at 2980. The case then continued as a class action in state court. *Shutts v. Phillips Petroleum Co.,* 240 Kan. 764, 732 P.2d 1286 (1987), cert. denied, 487 U.S. 1223, 108 S.Ct. 2883, 101 L.Ed.2d 918 (1988).

¶ 6 Amoco argues *Shutts* requires that a state court resolve conflict of laws issues before certifying a nationwide class. It asserts the trial court "decreed Oklahoma law as the governing law for the claims of a nationwide class of working interest owners"

without examining state law conflicts and thereby violated the mandate of *Shutts.* In its order certifying the class, the trial court cited *Shutts* in ruling "Oklahoma is not precluded from applying its own law in a class action so long as it has a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class such that application of the forum law is not arbitrary or unfair." It found Amoco had "significant and numerous" contacts with Oklahoma, including maintaining corporate offices in Tulsa, Oklahoma for over thirty years, centralizing its nationwide joint interest billings at the Tulsa office, and directing complaints and audits regarding Amoco-operated properties nationwide to the Tulsa office. The trial court concluded "the nationwide class sought to be certified in this case does not violate fundamental principles of due process or exceed the jurisdictional bounds of the Court." It then stated,

Although Amoco argues that inevitable conflicts of law will make a class action unmanageable, Amoco has failed to show an actual conflict of law that has a material effect on this action. It is the defendants' burden to demonstrate the existence of a true conflict of law. Moreover, at the certification stage it is improper to decide which law applies. (Citations omitted.)

¶ 7 *Shutts* contains no language requiring resolution of conflict of laws questions prior to certifying a class. To the contrary, the Supreme Court remanded the case without disturbing its class action status. While some courts view *Shutts* as requiring a determination of conflict of laws questions at the threshold of determining whether common issues of law predominate,[1] others consider that the minority view.[2] As *In Re Kirschner Medical Corp.,* 139 F.R.D. 74, 83 (D.Md.1991), the trial court in the instant case followed the rule of *Shutts* in finding the law of the forum state could be applied constitutionally, but declined to decide choice of law issues incident to a motion

---

1. See, e.g., *Poe v. Sears, Roebuck and Co.,* No. CivA1:96–CV–358–RLV, 1998 WL 113561 at *4 (N.D.Ga.) and *Ford Motor Co. Ignition Switch Products Liability Litigation,* 174 F.R.D. 332, 347–348 (D.N.J.1997)

2. *In Re Kirschner Medical Corp.,* 139 F.R.D. 74, 83 (D.Md.1991), *Delgozzo v. Kenny,* 266 N.J.Super. 169, 628 A.2d 1080, 1091–1092 (1993), and *Peterson v. Dougherty Dawkins, Inc.,* 583 N.W.2d 626, 629–630 (N.D.1998).

for class certification. It has not "decreed Oklahoma law as the governing law for the claims of a nationwide class of working interest owners" as Amoco asserts, but has reserved that issue for determination upon reaching the merits. Upon reaching those issues, it has the "flexibility and discretion to modify, or even to set aside, its order of certification if later developments demonstrate a need to do so." *Black Hawk v. Exxon*, 1998 OK 70 ¶ 10, 969 P.2d 337. The trial court's order did not violate *Shutts*.

## II

¶ 8 Amoco's second and third contentions of error challenge the trial court's finding common questions of law or fact predominate. Its fifth contention of error challenges the finding a nationwide class action is a superior method of adjudicating the controversy. Both these requirements arise from 12 O.S.1991 § 2023(B)(3).

¶ 9 The existence of common issues of law or fact is a requirement for class action certification under 12 O.S.1991 § 2023(A). One of the three alternative requirements of § 2023(B) is a finding that the common issues predominate and a class action is the superior method for adjudicating the controversy. Because Oklahoma's § 2023 "bears great similarity to the provisions of Rule 23, Federal Rules of Civil Procedure, we may resort to federal authority to shed light on its rationale." *Mattoon v. City of Norman*, 1981 OK 92, 633 P.2d 735, 737. In *Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 475 (N.D.Ill.1992), the court addressed the difference in focus between Subsections (a)(2) and (b)(3):

> [W]hile Rule 23(b)(3) is often considered in conjunction with the commonality requirement of Rule 23(a)(2), the focus of Rule 23(b)(3) is actually different. "Whereas (a)(2) addresses the issue of whether Rule 23 has any applicability at all to the law suit, (b)(3) addresses the issue of whether Rule 23 certification will have practical utility in the suit, considering the facts, substantive law, procedural due process, and fundamental fairness." . . . Specifically, the predominance question under Rule 23(b)(3) requires the court to consider whether the group seeking class certification seeks to remedy a common legal grievance. (Citations omitted)

The Advisory Committee Notes to the 1966 Amendment of FRCP Rule 23 reflect Subsection (b)(3) was intended to encompass "those cases in which a class action would achieve economies of time, effort, and expense," while excluding from class action status cases which "would degenerate in practice into multiple lawsuits separately tried."

¶ 10 Here the trial court ruled,

> Amoco treated all the non-operating working interest owners the same with respect to the issues involved in this case, despite differing forms of agreements. The acts or omissions of Amoco which constitute the alleged breaches of contract and/or fraud, as well as the other causes of action pleaded by Lobo, are the same or similar acts or omissions for each class member. The court concludes, therefore, that common questions predominate where the acts or omissions are the same, even though damage amounts may vary.

It then found a class action was superior to any other available method for a fair and efficient adjudication of the controversy because the average claim of each of the more than 2,700 working interest owners was relatively small compared to the expense of litigating the claims. The trial court placed the burden on Amoco "to demonstrate the existence of a true conflict of law," quoting *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority*, 1994 OK 20, 896 P.2d 503, 513, cert. denied, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995) ("One who asserts that a law different from that of Oklahoma governs the dispute bears the burden of identifying and invoking that other law.") The trial court rejected Amoco's argument inevitable conflicts of law would make a class action unmanageable because "Amoco has failed to show an actual conflict that has a material effect on this action."

### A.

¶ 11 On appeal, Amoco contends variations in state substantive law applicable to the claims of the nationwide class preclude

any finding of predominance. First, it argues Lobo bore the burden of establishing there are no conflicts between the laws of the various states at issue, citing federal authority.[3] Other federal and state courts have rejected such a requirement at the class certification stage.[4] In *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642 (Ct.App.Tex.1995), the Texas court applied Texas law placing the burden of showing a conflict on the party asserting application of foreign law when it rejected the class opponent's argument that conflict of laws issues defeated predominance. The trial court here followed an identical rationale, and properly placed the burden upon Amoco to prove the law of another state governed the dispute while placing the burden upon Lobo to prove the requirements of § 2023 were satisfied. *First Life Assur. Co. v. Mountain,* 1993 OK CIV APP 20, 848 P.2d 1177, 1178–1179.

¶ 12 Lobo's petition raises alternative legal theories, including fraud, obtaining money through false pretenses and deceit, breach of contract, unjust enrichment, accounting, tortious/bad faith breach of contract, and violation of the Oklahoma Consumer Protection Act, to recover for damages arising from a single set of facts, to wit, that Amoco double-billed working interest owners by billing as direct costs items which were also included in the "combined fixed rate" overhead charge. The trial court's finding the same acts or omissions of Amoco formed the basis of each class member's claims is well supported by the evidence cited in its order. For example, in its response to an audit exception letter by Lobo's accounting expert, Amoco stated, "We have approximately 60 audits performed on Amoco oper-

ated properties each year, all of which receive charges in the same manner and using the same systems as those used to generate charges to this Unit." Amoco's former audit coordinator, J.D. Shearrer, testified Amoco relied on COPAS[5] agreements in determining what was chargeable to the joint account. He agreed Amoco gave a standard response to audit exceptions based on the COPAS provisions. In addition, Lobo entered into evidence an April 10, 1995 meeting agenda of Amoco's "COPAS Review Committee," which showed Shearrer was to give a "[s]hort presentation on how we are 'double dipping' the joint account through charges to the O/C [Operations Center] account. This may provide a basis for compromise if we have to negotiate settlement on some audits." This record supports the trial court's finding Amoco treated the class members uniformly with respect to the disputed charges. Accordingly, the trial court did not abuse its discretion in ruling common issues predominate.

¶ 13 Amoco argues the substantive law governing the common law claims contains "irreconcilable conflicts" that preclude any finding of predominance, but does not identify any such common law conflicts. It does identify differences among the states' consumer fraud statutes and cites numerous cases for the proposition that application of multiple states' consumer fraud or consumer protection laws creates such conflicts as to defeat predominance. However, in those cases the conduct complained of took place in multiple states.[6] In another case cited by Amoco, *Martin v. Dahlberg,* 156 F.R.D. 207, 218 (N.D.Cal.1994), the court stated,

3. *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986), *Endo v. Albertine,* No. 88 C 1815, 1995 WL 170030 at *5 (N.D.Ill.), *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996), *In re American Medical Sys.,* 75 F.3d 1069, 1085 (6th Cir.1996), and *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.,* 174 F.R.D. 332, 349–350 (D.N.J.1997).

4. *Longden v. Sunderman,* 123 F.R.D. 547, 556 (N.D.Tex.1988), *Roberts v. Heim,* 670 F.Supp. 1466, 1494 (N.D.Cal.1987), *Peterson v. Dougherty Dawkins, Inc.,* 583 N.W.2d 626, 629 (N.D.1998), *Gordon v. Boden,* 224 Ill.App.3d 195, 166 Ill.Dec. 503, 586 N.E.2d 461 (1991).

5. "An accounting procedure prepared by Council of Petroleum Accountants Societies of North America," Williams and Meyers, *Manual of Oil and Gas Terms,* p. 148 (5th ed.1981).

6. E.g., *Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014 (11th Cir.1996) (using 1–900 pay-per-call numbers in sweepstakes promotions and credit card offers), *O'Brien v. J.I. Kislak Mort. Corp.,* 934 F.Supp. 1348 (S.D.Fla.1996) (understating mortgage finance charges), and *In Re Stucco Litig.,* 175 F.R.D. 210 (E.D.N.C.1997) (falsely advertising defective exterior finish system).

Defendants have shown that true conflict exists among the various consumer protection laws of the various states; however, they have not shown that any state other than California has an interest in applying its own laws, nor have defendants attempted to meet their burden of establishing that the application of California law would impair the interests of any foreign state.

Here Lobo complains of Amoco's conduct in Oklahoma. Oklahoma has an interest in redressing wrongs committed within the state.[7] Amoco has not shown any state other than Oklahoma has an interest in applying its consumer protection laws or that the application of Oklahoma's Consumer Protection Act would impair the interests of another state. Similarly, Oklahoma may apply its own punitive damages law to punish unlawful conduct in Oklahoma and deter its repetition. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996). The trial court did not abuse its discretion in ruling Amoco showed no actual conflicts material to this action.

### B.

■ ¶ 14 Amoco next argues the trial court abused its discretion in certifying the class because individual issues are raised by certain elements of the claims and by its affirmative defenses. It contends (1) the class includes members "who knew about [Amoco's] accounting procedures and accepted those charges," and "who objected to Amoco's accounting procedures and then settled and released their claims," (2) each class member must show individual reliance on misrepresentations, and (3) the claims of many class members are barred by statutes of limitation, laches, waiver, and estoppel. In *Black Hawk v. Exxon,* 1998 OK 70, ¶¶ 18, 29, 969 P.2d 337, the Oklahoma Supreme Court addressed similar arguments and stated,

> This argument relates to the merits of the action, and inquiry into the merits is inap-

propriate when the court is deciding whether a class should be certified.

.     .     .     .     .

> ... Inability to prove reliance on defendants' misrepresentations may ultimately defeat [plaintiffs'] claims but the mere possibility that their proof on this issue might fail is not grounds to deny certification of the class.... Nevertheless, in order to establish causes of action for fraud, at trial plaintiffs must prove all elements necessary to prove fraud, including their reliance on defendants' representations.

Amoco's arguments relate to the merits of its defenses. The trial court properly avoided reaching the merits of the action on a motion to certify a class.

### C.

■ ¶ 15 Amoco contends the trial court erred in finding a class action is a superior method of adjudicating the controversy because individual issues render a class action unmanageable. In determining the superiority of a class action, the trial court is required to balance "the benefits which the class action procedure has over other alternative methods of adjudicating the dispute ... against the management problems which may arise from class treatment." *Shores v. First City Bank Corp.,* 1984 OK 67, 689 P.2d 299, 305. Here the trial court reasoned that the claim of each working interest owner was small relative to the costs of litigating the claim. Therefore, individual litigation of their claims would be difficult or impossible for the members and would substantially increase the burden on the court system. It concluded the litigation was more manageable as a class action than if undertaken individually, even though management problems would arise. We find no abuse of discretion in the trial court's action.

### III

¶ 16 Amoco's last contention of error is Lobo did not prove typicality or adequacy of representation. It argues the trial court ignored evidence that Lobo's claims were ma-

---

7. See, e.g., *Martin v. Heinold Commodities, Inc.,* 117 Ill.2d 67, 109 Ill.Dec. 772, 510 N.E.2d 840, 847 (1987) and *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304, 1312 (1983).

terially distinct from and antagonistic to those of other class members.

¶ 17 The typicality requirement focuses on the similarity of the legal and remedial theories behind the class members' claims. *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). It is not a high threshold. *Shipes v. Trinity Industries,* 987 F.2d 311, 316 (5th Cir.1993) reh. den. 996 F.2d 309 (5th Cir.1993), cert. den. 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). Here the trial court's finding of typicality is amply supported by the record. The factual variations argued by Amoco may affect the amount of damages but do not preclude class certification.

¶ 18 Amoco argues Lobo's interests conflict with "many absent class members [who] have followed the same accounting and billing procedures alleged to have been fraudulent" by Lobo. The trial court ruled the evidence at hearing "did not reveal that Lobo has claims which are in any way antagonistic to the claims of members of the proposed class." Amoco has not alleged or cited evidence Lobo has claims against other class members relating to the subject matter of this litigation, and no such claims appear "obvious and pervasive" in the record. *Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1177 (9th Cir.1977) and *Newberry v. Washington Post Co.,* 71 F.R.D. 25, 26 (D.D.C. 1976). If there are class members who do not want to pursue their claim against Amoco, they may eliminate any conflict by opting out. *Marshall v. Holiday Magic, Inc.,* 550 F.2d at 1177. The trial court did not abuse its discretion in finding Lobo is an adequate representative of the class.

¶ 19 For the foregoing reasons, the trial court's order certifying the class is AFFIRMED.

JONES, C.J., and ADAMS, J., concur.