JOHN R. MARTIN, Plaintiff-Appellee, v. HEINOLD COMMODITIES, INC., Defendant-Appellant.

First District (3rd Division) Nos. 82—2661, 84—1229 cons.

Opinion filed December 30, 1985.

Sidley & Austin, of Chicago (H. Blair White, James W. Kissel, and Thomas F. Ryan, of counsel), for appellant.

William J. Harte, Ltd., and Plotkin & Jacobs, Ltd., both of Chicago (William J. Harte and John G. Jacobs, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, John R. Martin, on his own behalf and on behalf of all others similarly situated, sought certification of his cause as a class action, declaratory and injunctive relief, an accounting and damages resulting from the payment of foreign service fees in connection with London commodity options purchased through defendant, Heinold Commodities, Inc., subsequent to September 12, 1977.[1] The court

---

[1] The Commodity Futures Trading Commission banned London commodity options sales effective June 1, 1978. Lower, *State Enforcement of the Commodity Exchange Act*, 27 Emory L.J. 1057, 1073 (1978).

granted plaintiff's motion for class certification. Subsequently, the court granted the class' motion for partial summary judgment on counts I and II of the complaint, which were based on breach of fiduciary duty. The court ordered that "[t]he Plaintiff class will recover from defendant the entire amount of its investment in London Commodity Options, the amount to be determined by stipulation of the parties." Defendant appealed. During the pendency of the appeal, the trial court continued to exercise jurisdiction of the remainder of the case, *i.e.*, the issue of the amount of damages. Without a trial or evidentiary hearing, the trial court granted the plaintiff class' request for damages in its entirety and entered a judgment in favor of the plaintiff class for $1,728,948.27 in damages, and $458,219.05 for prejudgment interest. Defendant filed a second appeal. We consolidated the appeals, and we are treating the entire matter as a single appeal. We reverse both judgments and remand.

In counts I and II of his complaint, plaintiff alleged that defendant breached fiduciary duties owed to plaintiff and the class.[2] Specifically, plaintiff alleged that he signed a customer agreement with defendant for the purpose of engaging in London commodity option transactions and that he received from defendant a "Summary Disclosure Statement Concerning London Commodity Options." The summary disclosure statement, which is attached to the complaint as an exhibit, recites, in pertinent part:

> "The purchase price of a London Commodity Option consists of three components. One is a premium which is charged in London by the grantor or seller of the option. *** H.C.I. adds a foreign service fee of $1,200 to the London premium as well as one half the commodity futures commission rate normally charged on futures transactions. These charges have the following purpose: to recover costs of telephone, telex, bookkeeping, floor brokerage, clearing fees, and research costs involved with options transactions; as well as to compensate H.C.I. and the registered representative who services the options customer during the life of options for conducting such business."

The summary disclosure statement included a tear-off section to be signed, dated and returned to defendant "signifying the reader has

---

[2]Counts III and IV, which alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*), were not the subject of the class' motion for partial summary judgment.

read [the disclosure statement] and understands its contents."[3]

Plaintiff further alleged that he purchased certain London commodity options through defendant, and, in connection with each purchase, he was assessed a foreign service fee. In connection with his transactions, plaintiff received a statement from defendant confirming the trade made for his account, listing the price of the option premium, the commission and the foreign service fee for the trade and showing the account balance. One of plaintiff's confirmation statements, which is attached to the complaint as an exhibit, shows, with regard to one trade, debits to his account in the amount of $47.50 for commission and $900 for foreign service fee. Plaintiff alleged that he paid at least $1,650 in foreign service fees. Plaintiff also alleged that without disclosure to or authorization by him, 75% of each foreign service fee was rebated to defendant through an undisclosed arrangement between defendant and its London subsidiary and that the individual broker handling the transaction and the office manager personally received approximately 75% of the rebate. Further, plaintiff alleged that as a result of London commodity option transactions effected through defendant, he sustained losses of approximately $7,000.

Defendant answered the complaint and set forth various affirmative defenses. Defendant then moved for judgment on the pleadings on the grounds that the complaint failed to state a cause of action and that the court lacked subject matter jurisdiction. Defendant asserted that plaintiff's action was preempted by Federal law and Federal regulation. The court issued a memorandum in which it rejected defendant's preemption argument and an order denying defendant's motion for judgment on the pleadings. On September 14, 1981, the court granted plaintiff's motion for class certification. Subsequently, the court denied defendant's motion to decertify the class.

The class moved for partial summary judgments on counts I and II of the complaint, which alleged breach of fiduciary duty, and defendant moved for summary judgment. Defendant's submissions in opposition to partial summary judgment included a copy of a study done by Market Facts, Inc., "designed to test the understanding of the disclosure statement by a random sample of persons chosen on the basis of their similarity to the class members in this case." In

---

[3]Some class members received summary disclosure statements slightly different from the one plaintiff received. Plaintiff indicates that the differences are not material.

its memorandum and order of October 6, 1982, the trial court stated that the parties do not dispute the fact that defendant "occupies a position of fiduciary with respect to its clients by virtue of its agency relationship to them." The court indicated that it had to determine "whether the facts and policies concerning the 'foreign service fee' were material to the transactions and then whether these facts were disclosed properly to the customer." The court found that knowledge that the foreign service fee "would be split on a percentage basis between the defendant's entities based upon the volume of trading would have been important to investor's decisions regarding whether and with whom to place their accounts." The court noted that proper disclosure is based on an objective standard and must be full and complete between the agent and the principal, and the court found the consumer survey inappropriate under an objective standard. The court then concluded that "defendant as a matter of law failed to disclose information material to the transaction in question in violation of its fiduciary duty to the plaintiff class." The court granted the class' motion for partial summary judgment and assessed damages in the entire amount of the class' investment.

Defendant moved to vacate the partial summary judgment order. In support of its motion, defendant submitted the affidavit of James B. Cloonan, president of the American Association of Individual Investors, who set forth his conclusions regarding a customer's understanding of the disclosure statement and of the effect of the disclosure of additional facts on the desirability of the purchase of London commodity options from the purchaser's viewpoint. The court denied defendant's motion to vacate the partial summary judgment order.

This case involves the duties that a commodities broker owes to his customer. Defendant argues that a commodities broker does not have a fiduciary relationship with his customer as a matter of law, but, at most, the nature of the relationship presents an issue of fact. Defendant further contends that the court erred in applying fiduciary standards here. We disagree.

■■■ A commodities broker may be the fiduciary of his customer in a broad sense or a limited sense (see *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (E.D. Mich. 1978), 461 F. Supp. 951) depending on the nature of the account, the relative status of the parties and other circumstances peculiar to a particular case (see *American Mortgage Investment Co. v. Hardin-Stockton Corp.* (Mo. App. 1984), 671 S.W.2d 283, 293). Generally, the scope of affairs entrusted to a broker is limited to the completion of a transaction. (See *Schenck v. Bear, Stearns & Co.* (S.D.N.Y. 1979), 484 F.

Supp. 937, 947.) Thus, a broker may have a limited duty to serve his customer's financial interest within the framework of a single transaction, as, for example, when the customer has a nondiscretionary account in which the customer rather than the broker determines which purchases and sales to make. (See *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (E.D. Mich. 1978), 461 F. Supp. 951, 952.) However, a broker may become the fiduciary of his customer in a broad sense, as, for example, when he handles a discretionary account or a hybrid-type account in which the broker has usurped actual control over a technically nondiscretionary account. (See *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (E.D. Mich. 1978), 461 F. Supp. 951, 953-54.) Regardless of the extent of the relationship between a broker and a particular customer, we believe that a commodities broker is the agent of his customer at least with regard to the execution of a transaction and, as such, as a matter of law, he owes his customer certain fiduciary duties within the realm of the execution of the transaction. (See *In re Rosenbaum Grain Corp.* (7th Cir. 1939), 103 F.2d 656, 660.) We believe that the assessment of a foreign service fee is within the realm of the execution of the transactions here.

■ Defendant admits that it stood as a fiduciary when acting on its customers' behalf in purchasing London commodity options. However, defendant asserts that what is involved here is the terms of its compensation, and it does not owe its customers a fiduciary duty when dealing with them over the terms of its compensation. We agree that in most cases a broker is not subject to a fiduciary duty *in making terms* as to his compensation. (See Restatement (Second) of Agency sec. 390, Comment e (1958).) Nevertheless, we believe that as an agent, a broker has a duty to disclose material facts, and this duty necessarily encompasses disclosure of the terms of his compensation to the extent that they are material. The Restatement cannot be interpreted so as to permit a broker to call a commission by another name at the time of the transaction and subsequently assert that it is a commission, simply part of the broker's compensation, in order to avoid liability for nondisclosure. Defendant cites *Action Real Estate Corp. v. Bulechek* (Iowa 1981), 309 N.W.2d 502, in support of its position. However, in *Bulechek*, the breach of fiduciary duty claim was based upon a real estate broker's failure to make disclosures prior to the listing, and the court refused to recognize a fiduciary relationship between a real estate broker and a prospective seller prior to the listing. In contrast, under the circumstances here, the alleged breach was not an isolated event that took

place prior to the establishment of the broker-customer relationship, but, rather, it involved each transaction, as evidenced by the confirmation statement which the customers received. Thus, we conclude that the court properly applied fiduciary standards here.

Having determined that defendant owed plaintiff certain fiduciary duties within the realm of the execution of the transaction, we must consider the nature of those duties, specifically, the nature of the broker's duty to disclose. The class asserts that the fiduciary nature of the broker-customer relationship requires that the broker fully and completely disclose everything known by the broker concerning the transaction and the broker's self-interest therein. The class maintains that the question is, what did the broker know about the transaction and what did he tell the customer, and, if the latter is not completely coextensive with the former, a breach of fiduciary duty must be found. We disagree.

■■ ■ As an agent, a broker owes his customer various fiduciary duties. A spirit of trust and fidelity necessarily pervades the entire dealing between a broker and his customer. (*In re Rosenbaum Grain Corp.* (7th Cir. 1939), 103 F.2d 656, 661.) As an agent, the broker has a duty to use reasonable efforts to give his customer information which is relevant to the affairs entrusted to him. (*Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (N.D. Ala. 1971), 337 F. Supp. 107, 110-11, quoting Restatement (Second) of Agency sec. 381 (1958), *aff'd* (5th Cir. 1972), 453 F.2d 417.) Thus, the broker must communicate those material facts within his knowledge which might affect his customer's decision concerning a pending transaction (see *Cecka v. Beckman & Co.* (1972), 28 Cal. App. 3d 5, 11, 104 Cal. Rptr. 374, 377), or in any way affect the transaction and the subject matter of his agency (see *Moehling v. W.E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267, 170 N.E.2d 100, 107). In addition, as an agent, the broker has a duty of good faith and loyalty toward his customer which prohibits him from discharging the duties of his position in such a manner as to make a secret profit for himself. (See 12 Am. Jur. 2d Brokers sec. 86 (1964); Restatement (Second) of Agency sec. 387 (1958).) Thus, before acting for his own benefit in a transaction, the broker must disclose to the customer all material facts fully and completely (see *Moehling v. W.E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267, 170 N.E.2d 100, 107). When a broker is acting for his own benefit, material facts are those which the broker should realize would be likely to affect the judgment of the customer in giving consent to the broker to enter into the particular transaction on the specified terms. (See

*Moehling v. W.E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267, 170 N.E.2d 100, 107, quoting Restatement (Second) of Agency sec. 390, Comment a (1958).) The disclosure must include the fact that the broker is acting on his own account and all other facts which he should realize have, or are likely to have, a bearing upon the desirability of the transaction from the viewpoint of the customer. *Moehling v. W.E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267, 170 N.E.2d 100, 107, quoting Restatement (Second) of Agency sec. 390, Comment a (1958).

Thus, as an agent, a broker has a general duty to disclose material facts to his customer and a specific duty to disclose material facts to his customer when he is acting for his own benefit within the scope of the agency. In either case, the duty is limited to the disclosure of material facts. Therefore, we must consider whether the information regarding the distribution of the foreign service fee constituted material facts which defendant had a duty to disclose to the class. Defendant contends that the question of the materiality of the information presents a genuine issue of material fact. We agree.

■■ ■ Under any circumstances, price must be considered a material fact. (See *Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 630, 379 N.E.2d 1206, 1211.) Thus, in *Browder*, the court stated that if the defendants, used car dealers, were shown to be agents of the plaintiffs, used car purchasers whose retail installment contracts included the purchase of credit insurance as part of the financing agreement, then the defendants' failure to disclose the availability of comparable lower cost insurance would be a breach of fiduciary duty. Here, however, although the foreign service fee was disclosed as part of the price of the London commodity option, it is not the price itself which is involved, but rather, that the price allegedly included a secret commission. Thus, we cannot say that because price is involved here, there is no question of fact as to the materiality of information regarding the distribution of the foreign service fee. Nor can we say that the information regarding the distribution of the foreign service fee is unquestionably immaterial. In *Carter v. Webster* (1875), 79 Ill. 435, the court stated that it is wholly immaterial to a property owner what number of persons his own real estate agent may employ to assist the agent in finding a purchaser for his property or what the agent pays them for their services. However, while *Carter* involved dividing commissions as such, this case involves allegations that additional commissions were obtained by calling them foreign service fees. Since we believe that the question of the materiality of the information regarding the dis-

tribution of the foreign service fee presents a genuine issue of material fact which precludes summary judgment, we conclude that the court erred in ordering partial summary judgment in favor of the class.

■ Defendant argues that if information regarding the distribution of the foreign service fee is material, defendant's disclosure was adequate since the disclosure statement explained that the foreign service fee compensated Heinold-Chicago and Heinold employees. The class contends that the question is not the adequacy of the disclosure but the completeness of the disclosure. The class maintains that in considering the disclosure, the court must apply an objective test that rests not in the subjective reaction of the customer to the undisclosed information, but rather, on whether the broker has disclosed all relevant information which he knows. We believe that the class has accurately described the standard for disclosure here.

The fiduciary duty allegedly breached here is the duty to disclose material facts. Whatever is material must be disclosed. Thus, if the trier of fact determines that the distribution of the foreign service fee is material information, then the trier of fact must determine whether that material information was disclosed. Therefore, the question of whether all material facts were disclosed to the class must be answered with reference to what has been determined to be material. Because of our disposition of the materiality issue, we cannot hold that there is no genuine issue of material fact as to the completeness of the disclosure here, and we conclude that the court erred in finding, as a matter of law, that defendant failed to disclose information material to the transaction in question.

■ In view of our conclusion that the summary judgment as to liability must be reversed, the judgment as to damages and prejudgment of the measure of damages may recur on remand, we will consider the issue. Defendant argues that the class is not entitled to recover its investment losses as damages unless the jury concludes that the investment losses were caused by defendant's failure to disclose material facts regarding the foreign service fee. We agree.

■ As an agent, a broker is subject to liability for loss caused to his customer by any breach of duty. (See Restatement (Second) of Agency sec. 401. (1958); see *Frangos v. United States Fidelity & Guaranty Co.* (1974), 19 Ill. App. 3d 947, 950, 312 N.E.2d 688, 690.) If a broker has received a benefit as a result of violating his duty of loyalty, his customer is entitled to recover from him what the broker received, its value or its proceeds and also the amount of damage thereby caused. (See Restatement (Second) of Agency sec. 407(1)

(1958).) Thus, in this case, if defendant obtained additional commissions as a result of its failure to disclose material information regarding the foreign service fee, the class is entitled to recover the additional commissions and the amount of any damages caused by the failure to disclose. The measure of damages is the same whether the breach of duty is viewed as defendant's failure to disclose material information or defendant's acquisition of secret profits—the additional commissions—in violation of defendant's duty of loyalty to the class. (See Restatement (Second) of Agency sec. 388 (1958).) Plainly, a prerequisite to the recovery of investment losses is a determination that the losses were caused by defendant's breach of its fiduciary duty.

 ██ The class asserts, however, that this is a case of self-dealing by a fiduciary, and thus, the remedy must be to put the class in the position it was in before defendant breached its duty, and therefore the class can recover its investment losses. In support of this assertion, the class quotes section 205 of the Restatement (Second) of Trusts (1959). We note first that there is authority for applying trust law to questions of principal-agent relations. "An agent is fiduciary to his principal and the relation is treated generally the same, and with virtually the same strictness, as that of trustee and beneficiary." (*County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 627, 344 N.E.2d 540, 545; Restatement (Second) of Agency sec. 387, Comment b (1958).) Nevertheless, trust law does not support the class' position here because section 205 specifically refers to loss *resulting from* the breach of trust. (See Restatement (Second) of Trusts sec. 205(a) (1959).) Section 205, Comment a, states that the trust beneficiary "may have the option of pursuing a remedy which will put him in the position in which he was before the trustee committed the breach of trust," but this remedy is not always available. (Restatement (Second) of Trusts sec. 205, Comment a (1959).) We believe that the Restatement suggests that this remedy is unavailable if causation has not been shown. SEction 205, Comment f, indicates that since a trustee is liable for a loss resulting from a breach of trust, a question may arise as to the causal connection between the breach of trust and the loss, and if the trustee commits a breach of trust and a loss is incurred, the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust. (Restatement (Second) of Trusts sec. 205, Comment f (1959).) Absolute liability may be imposed upon a trustee as a matter of policy in order to deter the trustee from committing a breach of trust. (See Restatement (Sec-

ond) of Trusts sec. 205(f) (1959).) However, absolute liability appears to be limited to self-dealing involving the trustee's purchase for the trust property owned by the trustee individually. (See Restatement (Second) of Trusts sec. 205(f).) In our view, this is not a case where absolute liability should be imposed. Thus, we believe that a showing of causation is necessary before any member of the class can recover any investment losses. We therefore conclude that the court erred in assessing damages in the amount of the class' investment losses where those losses were not shown to have been caused by defendant's breach of its fiduciary duties. Under the circumstances, we decline to address the moot issue of prejudgment interest raised by the parties.

Finally, defendant argues that the court improperly certified a class action. Specifically, defendant maintains that common questions do not predominate over individual questions here.

■■■ A class action may be maintained where a common question of law or fact predominates over the individual questions that may be involved. (Ill. Rev. Stat. 1981, ch. 110, par. 2—801(2); *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 17, 428 N.E.2d 478, 483-84, *cert. dismissed* (1982), 459 U.S. 86, 74 L. Ed. 2d 249, 103 S. Ct. 484.) Where a defendant is alleged to have acted wrongfully in the same basic manner as to an entire class, common class questions dominate the case. See *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 273, 361 N.E.2d 815, 820.

Here, the class members completed essentially identical transactions with defendant in that they purchased London commodity options through defendant and paid the foreign service fees for their purchases. The central factual question regarding those transactions is whether the information about the distribution of the foreign service fee was material. We believe that this question is common to all class members and is predominant here. Once there is a determination that there exists a predominating question of fact or law, the fact that there may be individual questions, as proposed by defendant, will not defeat the predominating common question. (See *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 19, 428 N.E.2d 478, 485.) Moreover, some of the individual questions postulated by defendant are irrelevant. Other questions posed by defendant are mere hypotheticals, and the hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 20, 428 N.E.2d 478, 485, quoting *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 538, 155 N.E.2d 595, 598). Further, the fact that the class members' claims

for damages may be in varying amounts which have to be determined separately does not necessarily mean that the common question does not predominate. *Saldana v. American Mutual Corp.* (1981), 97 Ill. App. 3d 334, 337, 422 N.E.2d 860, 862.

■ Defendant also asserts that individual questions of law are presented by this breach of fiduciary duty action because class members are located in different States and various States interpret and apply common law standards differently. In order to maintain a class action, either a common question of fact *or* a common question of law must predominate. (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 17, 428 N.E.2d 478, 483, *cert. dismissed* (1982), 459 U.S. 86, 74 L. Ed. 2d 249, 103 S. Ct. 484.) We have already concluded that a common question of fact predominates here. However, in a multistate action such as this one, there is a possibility that differing questions of law will predominate over the common question of fact.

■ The class asserts, without support, that the principles of law applicable to this case are of the black letter variety and truly universal. We believe that the issue of whether the common question of fact or individual questions of law predominate in the present case is dependent upon the class' establishing in the trial court either the applicable interpretations of the common law in the States where nonresident class members reside in substantially similar to Illinois law as applied here (see Ross, *Multistate Consumer Class Actions in Illinois*, 57 Chi.-Kent L. Rev. 397, 421-22 (1981)), or that there are differing laws of the States which are subject to grouping in a manageable number of subclasses (see *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 17, 428 N.E.2d 478, 484). If, after the trial court has heard specific evidence relating to this issue, the trial court finds that the law in the other States is substantially similar to Illinois law, or that manageable subclasses may be made, then the common question of fact will necessarily predominate, and the statutory requirement will be satisfied. See *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 18, 428 N.E.2d 478, 484.

Accordingly, the judgments of the trial court as to liability, damages and prejudgment interest are reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WHITE, P.J., and McGILLICUDDY, J., concur.