823 F.2d 171
 COMMODITY FUTURES TRADING COMMISSION, et al., Plaintiffs,
v.
HERITAGE CAPITAL ADVISORY SERVICES, LTD., et al., Defendants.
SAELENS BEVERAGES, INC., Claimant-Appellant,
v.
Dennis M. O'DEA, Equity Receiver of Heritage Capital
Advisory Services, Ltd., Defendant-Appellee.
 No. 86-2763.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 27, 1987.
Decided June 22, 1987.
Rehearing Denied Aug. 26, 1987.
 
 Burrel Barash, Barash, Steorzbach & Henson, P.C., Galesburg, Ill., for claimant-appellant.
 Dennis M. O'Dea, Keck, Mahin & Cate, Chicago, Ill., for defendant-appellee.
 Before BAUER, Chief Judge, FLAUM, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 BAUER, Chief Judge.
 
 
 1
 In the receivership proceeding below, Saelens Beverage, Inc. ("Saelens"), an investor with Heritage Capital Advisory Services ("HCAS"), asserted a priority interest in the assets of HCAS. The receiver objected to the claim for priority and the district court entered summary judgment against Saelens, denying its claim for priority. This appeal followed. For the reasons outlined below, we affirm.
 
 I.
 
 2
 Saelens Beverages, Inc. was one of several victims of a collapsed pyramid scheme operated by Robert Serhant through Financial Partners Brokerage. Saelens had used HCAS, an unregistered commodity pool operator, to invest funds from Saelens' Employees Pension Plan Trust. Saelens was one of 257 investors with HCAS, with investments totalling $179,346.55. HCAS, along with various other operators, invested the money entrusted to it with Financial Partners Brokerage and Serhant. Serhant operated a United States Treasury Bill hedge-spread investment program, through which he would purchase T-Bills in a maturity amount equal to the initial investment and would speculate in the futures market with the difference between the discounted price of the T-Bill and the initial investment. Sometime prior to September 15, 1982, however, Serhant had ceased purchasing T-Bills and used all investments to speculate in the futures market. Eventually, Serhant lost all funds entrusted to him. There is no evidence in the record before us that HCAS defrauded investors or knew of Serhant's misuse of funds.
 
 
 3
 On or about September 24, 1982, Serhant's illegal activities came to light. Bank officers at the Independence Bank froze the HCAS account and the president of HCAS issued stop-payment orders on checks directed to Serhant. On September 28, 1982, the Commodity Futures Trading Commission obtained a temporary restraining order against HCAS and other investors, freezing their operating accounts at the Independence Bank. The district court appointed a receiver to take possession, custody and control of the assets of HCAS. The receiver initiated a claims procedure, inviting any investors and creditors of HCAS to file claims for their pro rata share of the assets.
 
 II.
 
 4
 The basis of Saelens' priority claim is that the court should impose a constructive trust for its benefit on the funds it invested with HCAS. The existence of a constructive trust is a matter controlled by Illinois law. 28 U.S.C. Sec. 1652; Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957). A constructive trust is an equitable doctrine by which a court will remove title from the legal owner, who holds it unfairly, and "convey that interest to one to whom it justly belongs." Sadacca v. Monhart, 128 Ill.App.3d 250, 255, 83 Ill.Dec. 463, 467, 470 N.E.2d 589, 593 (1984) (quoting Gravitt v. Jennings, 79 Ill.App.3d 286, 34 Ill.Dec. 720, 722, 288, 398 N.E.2d 395, 397) (1979). Before a constructive trust will be imposed, there must be some wrongdoing on the part of the legal owner. Baumgartner v. First Church of Christ, 141 Ill.App.3d 898, 96 Ill.Dec. 114, 490 N.E.2d 1319 (1986).
 
 
 5
 The district court found that HCAS, the legal owner, "neither defrauded Saelens nor gained any unjust enrichment from holding the money." We are bound to accept this factual finding unless convinced that the determination is clearly erroneous. Fed.R.Civ.P. 52(a). Saelens has not directed us toward any facts supported by the record, to call the district court's determination into question. HCAS derived no benefit when its assets were frozen and it was thrown into receivership. There is no evidence of wrongful intent. Saelens alleges only that because its funds were fortuitously stopped before being handed-over to the culprit, the funds rightfully belong to Saelens. However, absent unjust enrichment or fraud, Saelens can justify the imposition of a constructive trust only if it can show a breach of fiduciary duty.
 
 
 6
 HCAS deposited Saelens' funds in its bank account on September 21, 1982. When the account was frozen on September 28, it contained $315,642.95. Saelens baldly asserts that HCAS breached its fiduciary duty when it did not either invest the funds for the purpose intended or return the funds to Saelens. A confidential or fiduciary relationship arises where one party possesses superior knowledge and influence over the other party, and occupies a position of special trust. A.T. Kearney, Inc. v. INCA Int'l Inc., 132 Ill.App.3d 655, 87 Ill.Dec. 798, 477 N.E.2d 1326 (1985). Courts have recognized a fiduciary relationship between a commodities broker and its client. See Martin v. Heinold Commodities, Inc., 139 Ill.App.3d 1049, 94 Ill.Dec. 221, 487 N.E.2d 1098 (1985). HCAS was not a commodities broker, but a commodity pool operator. A commodity pool operator is one who solicits, accepts or receives funds from others which will be pooled for the purpose of trading on the commodities market. 17 C.F.R. Sec. 1.3(cc). Saelens urges that a commodity pool operator should be viewed as a fiduciary to the same extent as a commodities broker.
 
 
 7
 Even if we were to accept Saelens' position that a commodity pool operator should be treated as a fiduciary to the same extent as a commodities broker, we would have to reject Saelens' claim for priority. Only a broker operating a discretionary account--in which the broker determines which investments to make--is viewed as a fiduciary. Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 461 F.Supp. 951, 953 (E.D.Mich.1978). HCAS operated a nondiscretionary account for Saelens, in which Saelens determined which investments to make.
 
 
 8
 More importantly, Saelens can point to no fact either alleged or supported by the record to show that HCAS breached any fiduciary duty owed. Saelens does not contend that HCAS knew of Serhant's illegal activities; nor has Saelens alleged that HCAS should have investigated or monitored Serhant's activities more closely. Saelens would have us find a breach of fiduciary duty based on the mere fact that HCAS failed to invest the funds as the parties intended--due to the illegal activities of a third party--and failed to return them because the court froze its account. A fiduciary relationship does not give rise to strict liability on the part of the more knowledgeable party. To breach a fiduciary duty, a party must actually violate a trust--it is not enough to allege mere failure to perform.
 
 
 9
 Since we cannot find any support in the record for a finding that HCAS was unjustly enriched or that HCAS breached a fiduciary duty, we find no basis for Saelens' priority claim based on its assertion that a constructive trust should be imposed on the funds in question. The result may seem harsh unless viewed in the context of the entire proceeding below. Countless innocent parties were defrauded of hard-earned investments because of the illegal activities of Serhant. The only thing that distinguishes Saelens is its ability to trace its funds to the day the account was frozen. This is not a sufficient reason to allow Saelens to have a priority claim over other similarly defrauded investors. Accordingly, the district court's order denying Saelens' priority claim is
 
 
 10
 AFFIRMED.