JOHN R. MARTIN, on his own Behalf and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. HEINOLD COMMODITIES, INC., Defendant-Appellant.

First District (3rd Division)   No. 1—90—2866

Opinion filed December 30, 1992.

William J. Nissen and Thomas K. Cauley, Jr., both of Sidley & Austin, of Chicago, for appellant.

William J. Harte, Inc., and Plotkin & Jacobs, Ltd., both of Chicago (William J. Harte, John G. Jacobs, and Jonah Orlofsky, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, John R. Martin, on his own behalf and on behalf of all others similarly situated (the Class), brought this class action in the circuit court against defendant, Heinold Commodities, Inc., seeking declaratory and injunctive relief, an accounting and monetary dam-

ages resulting from the payment of certain fees in connection with the purchase of London commodity options (LCO's) through defendant. In 1982, the trial court granted the Class' motion for summary judgment and entered judgment in favor of the Class and against defendant in the amount of $2,187,167.32. On appeal, this court reversed and remanded for trial, holding that the question of materiality of the information regarding defendant's internal distribution of the foreign service fee presented a genuine issue of material fact precluding the entry of summary judgment. (*Martin v. Heinold Commodities, Inc.* (1985), 139 Ill. App. 3d 1049, 1057, 487 N.E.2d 1098, 1103.) The supreme court allowed the Class' petition for leave to appeal pursuant to Supreme Court Rule 315 (87 Ill. 2d R. 315), and affirmed the portions of this court's opinion relevant to the present appeal. *Martin v. Heinold Commodities, Inc.* (1987), 117 Ill. 2d 67, 510 N.E.2d 840.

Following a bench trial on remand, the trial court ruled that defendant's conduct in connection with the foreign service fee amounted to a breach of its fiduciary responsibilities to the Class and violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*) (Consumer Fraud Act), and entered judgment in favor of the Class and against defendant in the amount of $3,563,624.46. On appeal, defendant contends that (1) the trial court abused its discretion when it denied defendant's demand for a jury trial; (2) the trial court erred when it ruled that defendant breached its fiduciary responsibilities to the Class; (3) the trial court's ruling in favor of the Class on the Consumer Fraud Act claim is contrary to the manifest weight of the evidence; and (4) the trial court erred in its computation of damages when it permitted recovery of investment losses, compounded prejudgment interest and punitive damages. We affirm in part and vacate in part.

An LCO is an option contract purchased at a commodity option exchange in London, England, giving the purchaser of the option the right to either buy from or sell to the grantor of the option the underlying physical commodity (*e.g.*, precious metals, rubber, cocoa, sugar and coffee) at a stated price within a stated time. Prior to the 1970's, the offer and sale of foreign and domestic options was banned in the United States. In 1972, however, a regulatory loophole permitted the offer and sale of LCO's in the United States. Shortly thereafter, defendant and other American investment firms began to offer and sell LCO's to their customers.

Between September 1977 through May 1978, each of the 381 members of the Class purchased LCO's through defendant. Prior to purchasing these LCO's, each member of the Class signed and re-

turned to defendant a summary disclosure statement describing the nature of commodity options trading and the elements of the purchase price. After each LCO purchase, defendant would send the purchaser a confirmation statement separately itemizing the amount charged to his account. Each confirmation statement contained a charge for premium (the amount charged by the grantor of the option for the contractual right obtained in the LCO), commission and "foreign service fee," which is described by defendant in its summary disclosure statement as a method of recovering specifically enumerated costs associated with options transactions as well as compensating defendant and its servicing brokers.

In April 1978, the Commodity Futures Trading Commission (CFTC), which is empowered by Congress to regulate the commodity futures industry, determined that the offer and sale of LCO's in the United States was "fraught with fraud and other illegal and unsound practices" representing substantial risks to the public, and suspended trading of LCO's in the United States effective June 1, 1978. (17 C.F.R. §32.11 (1978).) In its explanation of fraud and other illegal and unsound practices, the CFTC stated:

> "The fact most scrupulously concealed by the vast majority of options firms is the full extent of fees and mark-ups. Notwithstanding significant mark-ups of between 50 and 300 percent, sales pitches, promotional materials and confirmations uniformly avoid disclosure and in fact conceal such fact by using various explanations or definitions. Mark-ups frequently are defined in promotional materials and customer confirmations as 'transaction fees,' 'foreign service fees' and 'U.S. service fees.' " 43 Fed. Reg. 16162 (1978).

In 1980, plaintiff, John R. Martin, brought this class action on his own behalf and on behalf of others who bought LCO's through defendant between September 1977 and May 1978. Following a bench trial on remand, the trial court determined that defendant's material omissions and misleading and deceptive conduct in connection with the foreign service fee amounted to an intentional and malicious breach of its fiduciary responsibilities to the Class and violated the Consumer Fraud Act. The trial court entered judgment in favor of the Class and against defendant in the amount of $3,563,624.46, ruling that the Class was entitled to recover all of its investment losses, including the premium paid to the grantor of the option, prejudgment interest compounded at the rate of 5% per annum and punitive damages in the amount of $500,000. This appeal followed.

Defendant first contends that the trial court abused its discretion when it denied defendant's demand for a jury trial. We disagree.

■ While the Illinois Constitution provides that the right to a jury trial shall remain inviolate, this right is not absolute and there is no right to a jury trial in equity actions. (Ill. Const. 1970, art. I, §13; *Pettey v. First National Bank* (1992), 225 Ill. App. 3d 539, 547, 588 N.E.2d 412, 418.) It is well established that a breach of fiduciary duty claim is an equitable action. (See *Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc.* (1992), 229 Ill. App. 3d 119, 124, 593 N.E.2d 872, 876.) Moreover, this court has consistently held that no right to a jury trial exists where an equitable accounting is sought in a breach of fiduciary duty action. (See *Gordon v. Bauer* (1988), 177 Ill. App. 3d 1073, 532 N.E.2d 855; *People ex rel. Daley v. Warren Motors, Inc.* (1985), 136 Ill. App. 3d 505, 483 N.E.2d 427; *Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre Co.* (1977), 52 Ill. App. 3d 122, 367 N.E.2d 247.) Defendant argues, however, that the breach of fiduciary duty claim here lost its equitable nature when the parties stipulated to the numerical calculations involved in the accounting. We find that a breach of fiduciary duty claim remains an equitable action triable without a jury irrespective of how damages are calculated.

Defendant further argues that it was entitled to a jury trial on the Consumer Fraud Act claim. While courts have permitted Consumer Fraud Act claims to be tried by juries, we conclude that there is no absolute right to a jury trial for the cause of action created by the legislature under the Consumer Fraud Act. (See *Rubin v. Marshall Field & Co.* (1992), 232 Ill. App. 3d 522, 531, 597 N.E.2d 688, 693; *Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 1110, 537 N.E.2d 1332, 1347; *Richard/Allen/Winter, Ltd. v. Waldorf* (1987), 156 Ill. App. 3d 717, 725, 509 N.E.2d 1078, 1083.) We therefore hold that the trial court did not abuse its discretion when it denied defendant's demand for a jury trial.

Defendant next contends that the trial court erred when it ruled that defendant breached its fiduciary responsibilities to the Class. We disagree.

Defendant first argues that the Class failed to prove that defendant owed a preagency fiduciary duty to the Class. In antecedent proceedings, the supreme court instructed the trial court about recognizing a preagency fiduciary duty in the present case. The supreme court stated:

> "We agree, that, as a general rule, an agent's fiduciary duty is limited to actions occurring within the scope of his agency and that the creation of the agency relationship is not itself

within that scope. However, we are unwilling to conclude, as a matter of law, that a fiduciary duty can never be imposed upon a prospective agent prior to the formal creation of an agency relationship. Thus, while the general rule governing preagency contacts does not require disclosure of the terms of a prospective agent's compensation, we believe that facts could be established which would support imposition of a fiduciary duty upon a prospective agent applicable to preagency contacts. ***

We intimate no view as to the specific facts which would support imposition of a fiduciary duty prior to the formal creation of an agency relationship between members of the plaintiff class and the defendant. ***

*** We also note that, where the very creation of the agency relationship involves a special trust and confidence on the part of a principal in the subsequent fair dealing of an agent, the prospective agent may be under a fiduciary duty to disclose the terms of his employment as an agent." 117 Ill. 2d at 78-79, 510 N.E.2d at 845.

Applying these instructions on remand, the trial court determined that the creation of the broker/investor agency in the present case involves a special trust and confidence imposing a preagency fiduciary duty upon defendant to disclose the terms of its employment as an agent to its prospective customers. The trial court articulated defendant's duty here to require disclosure to the Class of all material facts which in any way might affect the subject matter of the agency, including the duty to fully, clearly and candidly disclose the full extent of all compensation expected to be derived in connection with the contemplated LCO transactions.

■ After reviewing the record, we cannot say the trial court erred when it determined that defendant owed a preagency duty to the Class. The record indicates that members of the Class were uniquely dependent upon information obtained from defendant and its soliciting brokers in order to make a profit on LCO transactions. The trading of LCO's during the relevant period was exceedingly complicated due to the mechanics of LCO's and the London exchanges, the volatility of the commodity options market, the impact of currency conversion rates and the differing terminology used among brokers offering LCO's to the public. Based on the unique facts involving LCO transactions during the relevant time period, we hold that defendant owed members of the Class a preagency fiduciary duty to disclose all material facts in its knowledge affecting the subject matter of the

agency, including the full extent of all compensation expected to be derived in contemplated LCO transactions.

Defendant next contends that even if a preagency duty to disclose the terms of its employment exists, it discharged its fiduciary obligations when it tendered its summary disclosure statement to each member of the Class prior to executing an LCO transaction. We disagree.

Defendant charged its commodity futures customers a standard commission in the amount of $47.50 on each half (purchase and sale) of a commodity futures transaction. Defendant charged its LCO customers, however, a foreign service fee of up to $1,200 per LCO transaction in addition to its standard $47.50 commission. Defendant explains that it assessed the foreign service fee to recover additional costs associated with LCO transactions and to compensate brokers for answering telephone calls from customers and checking the status of customers' LCO's due to the increased shelf life of an LCO compared to a commodity futures position. After reviewing the record, we find that defendant used the foreign service fee here as a method to derive substantial additional compensation for the same services already covered by the commission rather than to recover additional costs associated with LCO transactions.

Defendant's summary disclosure statement, which was signed and returned to defendant by each member of the Class prior to executing an LCO transaction, describes the foreign service fee in the following manner:

> "[Defendant] adds a foreign service fee of $1,200 to the London premium as well as one half the commodity futures commission rate normally charged on futures transactions. These charges have the following purpose: to recover costs of telephone, telex, bookkeeping, floor brokerage, clearing fees, and research costs involved with options transactions; as well as to compensate [defendant] and the registered representative who services the options customer during the life of options for conducting such business. The foreign service fee for options which expire a relatively short time after their purchase, e.g. one week or one month options, may have a foreign service fee of less than $1,200."

■ Contrary to the defendant's disclosures, the record clearly and convincingly establishes that defendant incurred inconsiderable additional costs on LCO transactions not incurred on commodity futures transactions and that most, if not all, of the foreign service fee was used to provide additional compensation to defendant and its so-

liciting brokers. It is plain that a reasonable investor would consider it highly material to his investment decision that defendant was receiving additional compensation of up to 12 times the standard commission charged on a round-trip commodity futures transaction to answer telephone calls and check the status of his LCO. We therefore hold that neither defendant's summary disclosure statement nor its further disclosures to the Class fully, clearly and candidly disclosed the full extent of all compensation derived by defendant in the relevant LCO transactions. Accordingly, because defendant did not disclose all material facts within its knowledge affecting the subject matter of the agency, the trial court did not err when it ruled that defendant breached its fiduciary responsibilities to the Class.

Defendant next contends that the trial court's ruling in favor of the Class on the Consumer Fraud Act claim is contrary to the manifest weight of the evidence. We disagree.

The Consumer Fraud Act was enacted to protect consumers from, *inter alia*, unfair or deceptive practices in trade or commerce. (Ill. Rev. Stat. 1977, ch. 121½, par. 262.) It is clear from the evidence adduced at trial that defendant's conduct in connection with the foreign service fee violates the Consumer Fraud Act. Defendant argues, however, that the judgment entered against it on the Consumer Fraud Act claim should be reversed because its disclosures complied with applicable CFTC regulations. We find that neither defendant's summary disclosure statement nor its further conduct in connection with the foreign service fee complies with CFTC regulations.

Section 32.5 of the Code of Federal Regulations states in relevant part:

> "(a) Except as provided in paragraph (b) of this section, prior to the entry into a commodity option transaction, each option customer or prospective option customer shall be furnished a summary disclosure statement by the person soliciting or accepting the order therefor. The disclosure statement shall contain the following:
>
> (1) A brief description of the commodity option transactions being offered including:
> \*\*\*
> (ii) A listing of the elements comprising the purchase price to be charged, including the premium, mark-ups on the premium, costs, fees and other charges, as well as the method by which the premium is established." 17 C.F.R. §32.5(a)(1) (1977).

While defendant may have taken considerable measures to ensure that its summary disclosure statement complied with applicable CFTC

regulations, we find that defendant's summary disclosure statement does not fully, clearly and candidly disclose all mark-ups on premium, costs, fees and other charges comprising the purchase price of the LCO as required by section 32.5(a)(1)(ii) of the Code of Federal Regulations because it does not disclose the full extent of compensation it derived in LCO transactions. We also find that defendant failed to comply with section 32.9 of the Code of Federal Regulations, which provides in relevant part:

"It shall be unlawful for any person directly or indirectly:

(a) To cheat or defraud or attempt to cheat or defraud any other person; [or]

\* \* \*

(c) To deceive or attempt to deceive any other person by any means whatsoever;

in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction." 17 C.F.R. §32.9 (1977).

■ It is plain that defendant's intentionally misleading and deceptive conduct in connection with the foreign service fee, including its use of the foreign service fee as a method to derive additional compensation for the same services already covered by the commission, its use of the misleading and deceptive term "foreign service fee" in its summary disclosure statement and its use of a conversion rate in its confirmation statement to convert the foreign service fee from British pounds to American dollars where no actual conversion occurred, violates the prohibition against fraudulent and deceptive conduct prescribed by section 32.9 of the Code of Federal Regulations and the Consumer Fraud Act. Accordingly, the trial court's ruling in favor of the Class on the Consumer Fraud Act claim is not contrary to the manifest weight of the evidence.

■ Defendant next contends that the trial court erred in its computation of damages. Defendant first argues that the Class is not entitled to recover investment losses because proof of causation is insufficient as a matter of law. We disagree.

This court instructed the trial court to award the amount of any damages proximately caused by defendant's failure to disclose material information regarding the foreign service fee in the breach of fiduciary duty claim. (139 Ill. App. 3d at 1058-59, 487 N.E.2d at 1104-05.) Causation is also a necessary element for recovery of damages pursuant to the Consumer Fraud Act. (See *Fitzpatrick v. A C F Properties Group, Inc.* (1992), 231 Ill. App. 3d 690, 711-12, 595

N.E.2d 1327, 1341.) We find that the record in the present case contains sufficient proof of causation to support the trial court's award of investment losses.

The record here is replete with testimony from members of the Class and expert witnesses that each member of the Class would not have purchased LCO's through defendant had he known the full extent of compensation derived by defendant through its use of the foreign service fee. While it is true, as defendant asserts, that "neither [defendant's] representations concerning the foreign service fee nor its use of that fee had any effect on the value, risk or profit potential of [LCO's]," we agree with the trial court that the proximate cause of the Class' losses here, including the premium paid to the grantor of the LCO, is the material omissions and misleading and deceptive conduct by defendant in connection with the foreign service fee.

■ Defendant next argues that the Class is not entitled to recover prejudgment interest. It is well established that a court of equity is vested with broad discretion in awarding interest and may give or withhold interest as it deems equitable and just under the circumstances. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 87, 535 N.E.2d 876, 887-88.) After reviewing the record, we find that the trial court did not abuse its discretion when it awarded equitable interest compounded at the rate of 5% per annum in the breach of fiduciary duty claim. We find, however, that the trial court erred when it awarded compounded prejudgment interest in the Consumer Fraud Act claim. In the absence of express statutory or contractual language providing for prejudgment interest to be compounded, interest must be computed on a simple basis. (*Helland v. Helland* (1991), 214 Ill. App. 3d 275, 277, 573 N.E.2d 357, 358-59.) The Class has not cited any cases which have awarded compounded prejudgment interest pursuant to the Consumer Fraud Act. Accordingly, the award of compound prejudgment interest in the Consumer Fraud Act claim is vacated. It is unnecessary, however, to remand the case to recalculate prejudgment interest because judgment on the breach of fiduciary duty and Consumer Fraud Act claims is in the alternative, and judgment on the breach of fiduciary duty claim is affirmed *in toto*.

■ Defendant finally argues that the trial court erred in awarding punitive damages. We agree. Punitive damages are clearly disfavored at law and will be awarded only for conduct that is outrageous either because the acts are done with malice, an evil motive or because they are performed with a reckless indifference toward the rights of others. (*Tucker v. Illinois Power Co.* (1992), 232 Ill. App. 3d 15, 30, 597 N.E.2d 220, 231; *Ekl v. Knecht* (1991), 223 Ill. App. 3d

234, 243, 585 N.E.2d 156, 164.) While the record supports the trial court's finding that defendant's conduct was intentionally misleading and deceptive, we cannot say that it rises to the level of malice or reckless indifference towards the rights of others so as to justify an award of punitive damages. Accordingly, the award of punitive damages in the present case is vacated.

We therefore hold that defendant owed a duty to the Class to disclose all material facts within its knowledge affecting the relevant LCO transactions, and that it breached that duty when it failed to fully, clearly and candidly disclose the extent of additional compensation it derived through its use of the foreign service fee. We further hold that defendant's intentionally misleading and deceptive conduct in connection with the foreign service fee violates the Consumer Fraud Act.

Accordingly, the judgment of the circuit court is affirmed, except that the awards of prejudgment interest in the Consumer Fraud Act claim and punitive damages are vacated as stated herein.

Affirmed in part and vacated in part.

GREIMAN, P.J., and CERDA, J., concur.